IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GULF MARINE FABRICATORS, LP<br>    Plaintiff, | §<br>§<br>§ | |
| VS. | §<br>§ | C. A. No. 2:16-cv-00430<br>Rule 9(h) - Admiralty |
| THE ATP INNOVATOR, bearing IMO No. 742, her tackle, furniture, apparel, appurtenances, etc., *in rem*, and AMERINDO SERVICES LTD. and BLUE SKY LANGSA LTD., *in personam*,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## CLAIMANT'S MOTION TO VACATE ARREST

TO THE COURT:

COMES NOW Amerindo Services Ltd., solely in its capacity as claimant to the ATP INNOVATOR ("Claimant"), pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims, filing its Motion to Vacate Arrest, and respectfully would show:

### I.

### PROCEDURAL BACKGROUND

Plaintiff filed its Original Complaint on October 13, 2016 [Dkt. No. 1], along with its Motion for Issuance of a Warrant of Arrest [Dkt. No. 2]. A motion hearing was held on October 14, 2016, during which the Motion for Issuance of a Warrant was granted [Dkt. No. 6]. A Warrant of Arrest was issued that same day, which apparently was served on the ATP INNOVATOR by the U.S. Marshal's office on October 17, 2016. The ATP INNOVATOR is unmanned, so there is no one on the ATP INNOVATOR to receive service on behalf of the Claimant. A Return of Service was filed by the U.S. Marshal on October 25, 2016, which indicates that the papers were served by the U.S. Marshal on Chris Redding, Branch Manager for U.S. Security Associates. [Dkt. No. 19]. U.S.

Security Associates is the Substitute Custodian ordered by the Court [ *See* Dkt. No. 8]. Needless to say, Claimant never received service of the arrest papers. Apparently because of the foregoing, Plaintiff provided notice of the arrest by publication. In response to the notice by publication, Claimant filed its Claim of Owner on November 7, 2016 [Dkt. No. 20]. Claimant now files this Motion to Vacate the arrest claiming the ATP INNOVATOR is not a vessel for purposes of Plaintiff asserting a maritime lien.

## II.

## FACTUAL BACKGROUND

Claimant Amerindo Services Ltd. is the owner of the ATP INNOVATOR, which is a special purpose platform used as oil and gas production infrastructure. The ATP INNOVATOR currently is located in Aransas Pass, Texas at Plaintiff GM Fabricators LP's facility, where it has been berthed since December of 2015, pursuant to the terms of a Layberth Agreement entered into between Plaintiff, Amerindo Services Ltd. and Blue Sky Langsa Ltd.

As is relevant to the analysis for this Court, the ATP INNOVATOR: (1) has no engines for propulsion, so it must be towed if it is to move from one location to another, (2) it has no thrusters to move it around, (3) it does not have a DGPS automated positioning system to maintain its position automatically through thrusters, (4) it has no rudder or steering mechanism, (5) its primary purpose is not to transport people or cargo over water, (6) it does not have a raked bow, (7) it is designed and intended to be on location at a producing oil and gas field for a number of years, or as long as the field is operational, (8) once it is in place at an producing offshore oil and gas field, the job of the ATP INNOVATOR is to connect by pipe to various well heads to collect, process and separate oil and gas, and then transport the oil and gas by designated pipeline to the user located on shore, and

(9) the ATP INNOVATOR is held in place at the field by means of mooring lines anchored to the seabed.[1]

### III.

### APPLICABLE LEGAL STANDARDS

Plaintiff claims to have a maritime lien on the ATP INNOVATOR [Dkt. No. 1 at p. 5]. The Federal Maritime Lien Act authorizes a maritime lien against a vessel to collect debts owed for the provision of necessaries to the vessel. 46 U.S.C. § 31342. The word "vessel" includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water. 1 U.S.C § 3. Under Supplemental Admiralty Rule C, a vessel may be arrested to bring an action *in rem* to enforce a maritime lien. A Rule C action must be predicated on the existence of a maritime lien on the property against which the action is commenced. Under Supplemental Admiralty Rule E(4)(f), "any person claiming an interest in [property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated...." The issue for decision here is whether the ATP INNOVATOR is a vessel. If not, there can be no lien to support the arrest, and the arrest must be vacated.

### IV.

### LEGAL ARGUMENTS

In *Lozman v. City of Riviera Beach,* FL, 133 S.Ct. 735, 740-41 (2013), the United States Supreme Court emphasized that "[n]ot every floating structure is a vessel," and that the statutory definition codified at 1 U.S.C. § 3 "applies to an 'artificial contrivance ... capable of being used ... as a means of transportation on water.'" The Court cited the meaning of "transportation" as involving

---

[1] *See* Ex. A attached, which is the affidavit of Joseph Key.

the "conveyance (of things or persons) from one place to another," and noted that this definition must be applied "in a practical, not theoretical, way." *Id*. at 741. The Court held that a structure does not fall withing the scope of this statutory phrase unless a reasonable observer, looking at the floating structure's physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water. *Id*. In terms of the future application of the *Lozman* decision, one court has noted that the decision "sent a shot across the bow" of those lower courts whose "opinions [could] be read as endorsing the 'anything that floats' approach" to determining vessel status. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 2013 A.M.C. 567, 572-75 (S.D.N.Y. 2013)(dry dock not a vessel because not designed to a practical degree for carrying people and things over water).

In terms of applying *Lozman*, a review of *Martin v. Fab-Con, Inc.*, 9 F.Supp.3d 642, 649 (E.D. La. 2014) is instructive on how to apply the new guidelines. In *Martin*, the court found that the UNITY was not a "vessel" for purposes of the general maritime law. The UNITY was a quarters barge used as a floating hotel for workmen at the job site. It did not have a rudder or an engine, and had to be spudded into place at the site. The court reasoned that the reasonable observer would not believe that the UNITY was designed to a practical degree for transporting people or cargo over water. *Id*. at 649; *see also Higginbotham v. Drake Towing, L.L.C.*, 2016 A.M.C. 227 (E.D. La. 2015)(same).

Two other post-*Lozman* decisions are instructive here, if not determinative of the vessel status issue.[2] The first is *Mooney v. W&T Offshore, Inc.*, 2013 A.M.C. 1480 (E.D. La. 2013). The

---

[2] A pre-*Lozman* decision is also worthy of mention. In *Mendez v. Anadarko Petroleum Corp.*, 466 Fed. Appx. 316 (5th Cir. 2012), the Fifth Circuit held that a floating production platform (the RED HAWK) permanently moored to the Outer Continental Shelf was

issue in the case was whether the MATTERHORN SEASTAR was a vessel under the general maritime law. The facts were that the structure had been on the Outer Continental Shelf on location for years, it was permanently attached to the seabed by a series of steel tubes, pontoons, tendons and pilings, and the structure was further connected to an oil export pipeline, a gas export pipeline and casing risers. Further, the function of the MATTERHORN SEASTAR was to process and separate oil and gas from various wellheads, and then transport the oil and gas to Louisiana via export pipelines. Lastly, the structure had no form of self-propulsion, no raked bow, and was intended to remain in position for the productive life of the reservoirs. *Id*. at 1487-88. For these reasons, the court held that it was not a vessel. *Id*. at 1489-90, citing *Moore v. Bis Salamis, Inc.*, 748 F.Supp.2d 598 (S.D. Tex. 2010)(large offshore oil production platform not a vessel); *Washington v. BP Am., Inc.*, No. 10-1486, 2012 WL 5831800 (W.D. LA. 2012)(same); *Rushing v. Pride Intern., Inc.*, No. 11-0294, 2011 WL 3021043 (S.D. Tex. 2011)(same); *Scroggs v. Bis Salamis, Inc.*, No. 09-1007, 2010 WL 3910563 (E.D. Tex. 2010)(same); *Abram v. Nabors Offshore Corp.*, No. 09-4091, 2010 WL 3433056 (S.D. Tex. 2010)(same).

The second case is *Warrior Energy Services Corp. v. ATP Titan*, 2014 A.M.C. 2514 (5th Cir. 2014). In this case, the plaintiff sought to enforce a maritime lien against the ATP TITAN. The Fifth Circuit agreed with the trial court that the ATP TITAN was not a vessel, and therefore there could be no maritime lien. *Id*. at 2516-18. The ATP TITAN was not a vessel because it was moored

---

not a vessel. Although it floated, it was permanently moored by six mooring lines embedded into the sea floor. Steel flow lines and export pipelines attached the spar to extraction points in one direction and an onshore production facility in the other. To move the spar, it had to be completely detached from the mooring lines and pipelines, which would take a significant amount of time and cost a significant amount of money. *Id*. at 318-19. The purpose of the ATP INNOVATOR is the same or similar to that of the RED HAWK.

to the seabed by means of twelve chain mooring lines connected to twelve anchor piles. It was also connected to an oil and gas infrastructure, and it had not moved since in was constructed and installed at its location. Further, the ATP TITAN had no means of self-propulsion, other than manipulating its mooring lines, and moving the ATP TITAN would take a significant amount of time and cost a significant amount of money. In light of the foregoing, the court found that the ATP TITAN was not practically capable of transportation on water and was not a vessel. *Id*. at 2517-18.

Like all of the other structures that have been held by courts in this Circuit not to be vessels (*see* cases cited above), the ATP INNOVATOR is not a vessel. It has no means of propulsion, no thrusters, no DGPS automatic positioning system, no means of steering, no rudder and no raked bow. The purpose of the ATP INNOVATOR is the same as the ATP TITAN, the RED HAWK, the MATTERHORN SEASTAR and other similar production structures held not to be a vessel. The ATP INNOVATOR is built to be moored into place on the Outer Continental Shelf, connected to the oil and gas infrastructure, connected to export pipelines, and is supposed to remain in place for the life of the reservoir. In light of these characteristics, the ATP INNOVATOR is not practically capable of transportation on water and is therefore not a vessel. *See Warrior Energy,* 2014 A.M.C. at 2517-18 and cases cited therein; *Mooney*, 2013 A.M.C. at 1489-90 and cases cited therein; *Mendez*, 466 Fed. Appx. at 318-19. Since the ATP INNOVATOR is not a vessel, no maritime lien can be asserted against it. *See Warrior Energy,* 2014 A.M.C. at 2516-18.

WHEREFORE, PREMISES CONSIDERED, Amerindo Services Ltd., solely in its capacity as Claimant, prays: (1) that the Court hold that the ATP INNOVATOR is not a vessel, (2) because the ATP INNOVATOR is not a vessel, that the Court vacate the arrest of the ATP INNOVATOR, and (3) for such other relief to which it may be justly entitled.

        Respectfully submitted,

By: */s/ Richard L. Gorman*
      Richard L. Gorman
      State Bar No. 00784155
      Federal Bar No. 15685
      12335 Kingsride Ln. #354
      Houston, Texas 77024-4116
      Telephone: (832) 725-4026
      Facsimile: (713) 239-1020
      Email: rg@richardgormanlaw.com
      Attorney for Claimant
      Amerindo Services Ltd.

OF COUNSEL:

RICHARD GORMAN LAW

## CERTIFICATE OF SERVICE

    I hereby certify that on this 8th day of November 2016, a copy of the foregoing was served on counsel fo record ***By Notice of Electronic Filing***.

        */s/ Richard L. Gorman*
        Of Richard Gorman Law

01879/motion.11/08/16