IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GULF MARINE FABRICATORS, LP | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | C. A. No. 2:16-cv-00430 |
| | § | Rule 9(h) - Admiralty |
| THE ATP INNOVATOR, bearing IMO No. | § | |
| 742, her tackle, furniture, apparel, | § | |
| appurtenances, etc., *in rem*, and AMERINDO | § | |
| SERVICES LTD. and BLUE SKY LANGSA | § | |
| LTD., *in personam*, | § | |
|     Defendants. | § | |

**CLAIMANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR REVIEW OF THE MAGISTRATE JUDGE'S
MEMORANDUM AND RECOMMENDATION**

TO THE COURT:

COMES NOW Amerindo Services Ltd., solely in its capacity as claimant to the ATP INNOVATOR ("Amerindo" or "Claimant"), filing its Response to Plaintiff's Motion for Review of the Magistrate Judge's Memorandum and Recommendation on "vessel" status, and respectfully would show:

**I.**

Plaintiff has attacked every aspect of the Magistrate Judge's Memorandum and Recommendation, [1] including the preponderance of the evidence standard used by Magistrate Judge

---

[1] Plaintiff's substantive argument essentially is the INNOVATOR at one time was the ROWAN MIDLAND, a semi-submersible drilling rig, so the legion of Fifth Circuit cases holding semi-submersible drilling rigs to be vessels apply to the INNOVATOR. Plaintiff makes this argument even though the INNOVATOR was converted from a drilling rig to an offshore production facility by January of 2006, and was designed to remain in place and moored to the seabed for the life of the oil and gas field, and functioned in that capacity from March of 2006 until the United States ordered operations of ATP Oil & Gas Corporation shut-in on April 23, 2013 (*see* Ex. A attached), after which the INNOVATOR was towed to Ingleside, where the structure has remained, even after the sale of the structure to Amerindo in 2016. Post-sale to

Ellington. Amerindo responds to the five separate attacks as follows:

A.  **The Magistrate Judge Applied the Correct Legal Standard**.

Plaintiff's first attack is on the legal standard applied by the Magistrate Judge. Plaintiff argues that the Magistrate Judge's application of the preponderance of the evidence standard is incorrect, and that the probable cause standard (a lesser standard) should be applied, which would change the outcome. Plaintiff's argument relies primarily upon three cases, *Olendorff Carriers GmbH & Co. KG v. Grand China Shipping (Hong Kong) Co., Ltd.,* 2013 U.S. Dist. LEXIS 106080 (S.D. Tex. 2013)*, White Rosebay Shipping S.A. v. HNA Group Co.*, 2013 U.S. Dist. LEXIS 15249 (S.D. Tex. 2013), and *Hawknet Ltd. v. Overseas Shipping Agencies*, 2009 U.S. Dist. LEXIS 44023 (S.D.N.Y. 2009). All three of these cases address the question of piercing the corporate veil, or alter ego. They do not address the question before this Court, which is whether the property seized (the INNOVATOR) is a "vessel" to support a maritime lien and *in rem* jurisdiction.[2] Because the question before this Court implicates the issue of subject matter jurisdiction, the Magistrate Judge's use of the preponderance of the evidence standard is correct, for the following reasons.

Magistrate Judge Ellington cites *Vinmar Int'l Ltd. V. M/T CLIPPER MAKISHIO*, No. H-09-3829, 2009 WL 6567104 (S.D. Tex. Dec. 9, 2009) and *Seatrade Grp. N.V. v. 6,785.5 Metric Tons of Cement*, No. H-05-2771, 2005 WL 3878026 (S.D. Tex Dec. 7, 2005) to support the use of the

---

Amerindo, the INNOVATOR has remained in Ingleside at Plaintiff's facility primarily due to depressed oil prices since the sale. Plaintiff's argument dismisses or ignores that a court in this very District previously held the post-conversion INNOVATOR was not a vessel in 2008. *Case v. Omega Natchiq*, No. H-08-0835, 2008 WL 2714124 at *7 (S.D. Tex. July 10, 2008)(LEXIS version attached as Ex. B).

      [2]     *See Lozman v. City of Riviera Beach, Florida*, 133 S.Ct. 735, 745 (2010)(a court's admiralty jurisdiction may turn on application of the term "vessel").

preponderance of the evidence standard. This is the correct application of the standard, because the issue in both *Vinmar* and *Seatrade* was whether there was a valid maritime lien on the property at issue to support an arrest and/or attachment of property under the Supplemental Admiralty Rules. For this particular issue, because it is jurisdictional, "the plaintiff must show by a preponderance of the evidence that it is entitled to a valid lien." *Vinmar*, 2009 U.S. Dist. LEXIS 127956 at *2; *Seatrade*, 2005 U.S. Dist. LEXIS 43060 at *6-7.

Why is this? Because federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994). As courts of limited jurisdiction, they "must presume that a suit lies outside the court's jurisdiction, and the burden of establishing federal jurisdiction rests upon the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). For these reasons, federal courts have "a continuing obligation to examine the basis for their jurisdiction." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). This examination can be done upon motion of a party, or *sua sponte,* at any time. *Id*. (citations omitted).

Here, Plaintiff asserted a maritime lien against the INNOVATOR pursuant to the Maritime Lien Act, 46 U.S.C. § 31301, *et seq.*, which states in part "a person providing necessaries to a vessel ... has a maritime lien on the vessel [and] may bring a civil action *in rem* to enforce the lien." 46 U.S.C. § 31342(a). Plaintiff agrees with this proposition of law, stating succinctly in its brief that if the INNOVATOR is not a vessel, Plaintiff has no maritime lien under the Maritime Lien Act. *See* Dkt. No. 30-1 at p. 3, Section (II)(A). Amerindo obviously agrees with this because this is the basis for Amerindo filing the motion to vacate in the first instance. The United States Supreme Court also agrees, stating federal jurisdiction under the Maritime Lien Act turns on whether the property seized

is a vessel, as that term is defined in 1 U.S.C. § 3. *Lozman*, 133 S.Ct. at 745.

Because the question here is ultimately jurisdictional, Plaintiff must prove by a "preponderance of the evidence" that the Court has jurisdiction based upon the complaint and evidence. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012), citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A court can find that subject matter jurisdiction is lacking based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew*, 668 F.3d at 781, quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In making her recommendation, the Magistrate Judge did precisely what she is supposed to do. She reviewed the Complaint, the briefs, and the evidence submitted to the Court. She then applied the preponderance of the evidence standard to the facts, undisputed and/or resolved, to determine that the INNOVATOR is not a vessel for purposes of the Maritime Lien Act. This is a jurisdictional determination, and her ultimate recommendation to you. For the foregoing reasons, Magistrate Judge Ellington applied the proper legal standard, so Plaintiff's first objection[3] should be overruled. *Lozman*, 133 S.Ct. At 745; *Ballew*, 668 F.3d at 781; *see also Vinmar*, 2009 U.S. Dist. LEXIS 127956 at *2; *Seatrade*, 2005 U.S. Dist. LEXIS 43060 at *6-7.

**B.  The INNOVATOR is not a Vessel**.

Plaintiff mounts a four pronged attack to the Magistrate Judge's Recommendation that the INNOVATOR is not a vessel.[4] For the following reasons, the Recommendation of

---

[3]  Dkt. No. 30-1, Section B at pp. 4-8.

[4]  Dkt. No. 30-1, Section C at pp. 8-23.

Magistrate Judge Ellington is the correct decision, and Plaintiff's objections should be overruled.

    1.  Plaintiff first criticizes the Magistrate Judge's Recommendation[5] for focusing on the INNOVATOR's prior use and potential use instead of her present capacity to perform maritime transportation.[6] This attack seems at odds with Plaintiff's own argument, which focuses solely on what the ATP INNOVATOR was when it was the ROWAN MIDLAND, a semi-submersible drilling rig that by nature and function would move from location to location for the purpose of drilling oil and gas wells. All of the cases relied upon by Plaintiff are cases holding that semi-submersible <u>drilling rigs</u> are vessels.[7] Plaintiff argues there is "nothing that

---

  [5]  Dkt. No. 30-1, Section C(1) at pp. 8-13.

  [6]  Plaintiff also argues that the Magistrate Judge should not have relied upon the stated intent for the INNOVATOR. Dkt. No. 30-1 at p. 9. The Magistrate Judge did not simply rely upon the evidence submitted by the Amerindo through the affidavit of Joseph Key. She looked to how the INNOVATOR was used after the conversion from a drilling rig to a production facility, and what happened to it after that, gained an understanding for the purpose of the new structure, and then understood that Amerindo's stated intent to use the INNOVATOR in its capacity as a production facility, like it had been used in the Mississippi Canyon block, meant that the purpose and use for the structure was not going to change. It certainly is not going to converted back to a drilling rig and moved from location to location on a regular basis. In short, the Magistrate Judge gained an understanding for what the structure was and is so that she could properly apply the standards for determining vessel status, which is factually driven and not formulaic.

  [7]  As the Magistrate Judge points out, Plaintiff failed to discuss any of the Fifth Circuit cases decided after *Lozman* other than the *Deepwater Horizon*, but instead relied (as it continues to rely) on the historical classification of semi-submersible drilling rigs as vessels. Dkt. No. 29 at p. 10 of 12. As for the DEEPWATER HORIZON, this drilling rig had a dynamic navigational positioning system which utilized trusters (propulsion) to maintain its position over the well. It employed a satellite global positioning system device and complex thruster technology to stabilize itself. The only connection the DEEPWATER HORIZON had with the seabed was the drill sting connected to the blowout preventer, which was connected to the well head. Also significant to the District Court was the fact that all parties except one (Cameron) agreed the DEEPWATER HORIZON was a vessel. *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*, 808 F.Supp.2d 943, 949-50 (E.D. La. 2011). On the other hand, the INNOVATOR has no propulsion system, and certainly no navigational positioning

substantially distinguishes the INNOVATOR from the numerous semi-submersible rigs the Fifth Circuit has found to be vessels."[8] This is completely inaccurate, as it ignores the conversion of the structure from a drilling rig to a production platform designed to be permanently moored to the seabed, attached by production pipes to the well heads located in the oil and gas field for the life of the field, and also attached to the transportation pipelines that transport the oil and gas to various locations on the shore. It also ignores that the purpose of the INNOVATOR, as a production facility, will be the same as it was in the Mississippi Canyon block, which is to remain in place for the life of the field where the INNOVATOR will be located,[9] which for all practical purposes means the remaining life of the INNOVATOR.[10] The Magistrate Judge

---

system with complex thruster technology to hold it in place. When on location, the INNOVATOR is permanently connected to the seabed by a series of anchors. It is also connected by pipes to the wellheads, and pipelines to transport the oil and gas to shore. The stated intent is for the INNOVATOR to remain in place for the life of the field. Because the INNOVATOR cannot move on its own, the Magistrate Judge said the INNOVATOR is stationary, so it is more like the BIG FOOT in *Baker v. Dir., Office of Workers' Comp. Programs*, 834 F.3d 542 (5th Cir. 2016), and less like the SUPER SCOOP in *Stewart v. Dutra Constr. Co.,* 543 U.S. 481 (2005). As can be seen, the analysis conducted by the Magistrate Judge is far more thorough than the Plaintiff implies, and far more thorough than Plaintiff's own analysis.

[8] Dkt. No. 30-1 at p. 11.

[9] The INNOVATOR is waiting for oil prices to rebound, so that offshore oil and gas production can resume. Then, the INNOVATOR should be able to be relocated and used again as a production facility.

[10] Plaintiff argues that the INNOVATOR has the inherent capabilities of moving from job site to job site. This is an argument based upon what the structure used to be (a drilling rig), and not what it is now. There is no evidence in the record that the proposed purpose for the structure is to move from place to place. In fact, the evidence in the record is to the contrary, that the structure will move to one location and stay there for the life of the field or the INNOVATOR, whichever comes first, similar to the purpose of the INNOVATOR before the Department of the Interior shut in the INNOVATOR's operations in April of 2013, which led to the structure being towed to Ingleside in the first place.

reviewed the history of the structure, which was available through various court documents on file in this District, and in Louisiana,[11] looked at how the structure was used after the conversion was performed, addressed the issue as to why the INNOVATOR was towed to Ingleside, and looked to the proposed use of the structure by its new owner, Amerindo, the Claimant herein. The Magistrate Judge also looked at the characteristics of the structure and its lack of self-navigational ability, applied the existing law to the facts, and recommends to you that the INNOVATOR is not a vessel under the applicable United States Supreme Court cases (*Stewart* and *Lozman* being the most recent), and Fifth Circuit cases decided after *Lozman*. Based upon the foregoing, Magistrate Judge Ellington states that the INNOVATOR does not appear to have characteristics that make it a transporter of people or cargo other than incidentally, which is the critical question. Because of this, "although the INNOVATOR has some characteristics of floating structures that have been considered vessels,"[12] the Magistrate Judge recommends that the INNOVATOR is more like the BIG FOOT in *Baker* and less like the SUPER SCOOP in *Stewart*, so it is not a vessel. The decision is well reasoned, and within the guidelines for determining jurisdiction, as discussed in section A above at p. 4. Plaintiff's first attack or

---

[11] This is proper for the court to do, as a court may take judicial notice of the docket entries and pleadings filed in civil actions, bankruptcy cases and adversary proceedings in the District. *In re Arhens*, 120 B.R. 852, 854 (N.D. Tex. 1990), citing *Securities & Exchange Comm'n v. First Financial Group of Texas*, 645 F.2d 429, 433 (5th Cir. 1981). When a court takes judicial notice of documents from another court, it may only take notice of the undisputed facts therein. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664-65 (N.D Tex. 2011).

[12] Dkt. No. 29 at p. 11 of 12. This quote is important because Plaintiff argues that the Magistrate Judge ignored its evidence about the characteristics of the INNOVATOR that remained after the conversion. This quote shows that Plaintiff's argument is unfounded. The Magistrate Judge looked at all of the characteristics of the INNOVATOR in making her recommendation.

objection under Section C should be overruled.

    2.    Plaintiff next attacks[13] the Magistrate Judge's Recommendation because of claimed factual findings not supported by the evidence[14] and improperly resolved conflicting evidence in favor of Amerindo.[15] Plaintiff claims that all factual disputes should have been resolved in its favor. This argument ignores the jurisdictional nature of the issue before the Court. As stated above, in these circumstances, Plaintiff must prove by a preponderance of the evidence that the Court has jurisdiction based upon the complaint and evidence. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012), citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A court can find that subject matter jurisdiction is lacking based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

---

[13] Dkt. No. 30-1 at pp. 13-18.

[14] The only factual recitation that appears incorrect in the Recommendation is the Magistrate Judge's statement that the INNOVATOR is moored for repair or assembly. However, as Plaintiff points out, the INNOVATOR is receiving minimal repairs and maintenance to preserve her condition. This lone fact is not, and cannot be dispositive of the vessel status issue, as it does not relate in any way to the issue of whether the INNOVATOR is the transporter of people or cargo. More important to the analysis is the Magistrate Judge's finding that the INNOVATOR is ultimately designed to be moored to the seabed in its future location. This factual information comes in part from undisputed facts in the *Case* decision, indicating the INNOVATOR was moored to the seabed in the Mississippi Canyon block when the incident occurred, and from the uncontradicted affidavit of Joseph Key, who states the same future purpose and proposed use for the INNOVATOR.

[15] The conflicting evidence appears to be between (1) the evidence that the INNOVATOR was moored previously to the seabed in the Mississippi Canyon block for the intended life of that field, and the intended future purpose for the INNOVATOR to be moored to the seabed at a new field for the life of the field or the INNOVATOR, versus (2) the evidence submitted by Plaintiff that the INNOVATOR is designed to be mobile so that it can be moved from site to site. Plaintiffs evidence, in line with its whole argument, describes the purpose for when the INNOVATOR was the ROWAN MIDLAND, and was semi-submersible drilling rig, versus the purpose post-reconfiguration, which is a production facility to be moored to the seabed for the life of the field, or the remaining life of the INNOVATOR.

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew*, 668 F.3d at 781, quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The Magistrate Judge has done this. Plaintiff's argument therefore fails because it is based upon an incorrect legal standard.

In further support of this second attack, Plaintiff criticizes the Magistrate Judge for what Plaintiff describes as her "ultimate reliance" on two cases, *Stewart* and *Baker*.[16] This is an odd argument from Plaintiff, especially when considering that it is Plaintiff that argues as one of its primary arguments that the INNOVATOR is like the SUPER SCOOP in *Stewart*. The Magistrate Judge was simply addressing the Plaintiff's argument, and concluding that in her view, based upon the facts[17] and applicable law, the INNOVATOR is more like the BIG FOOT in *Baker* than the SUPER SCOOP in *Stewart*.

---

[16] The Magistrate Judge, as Plaintiff acknowledges in passing, discussed in detail other post-*Lozman* cases in applying the *Lozman* decision to the INNOVATOR. Those cases are *Warrior Energy Servs. Corp. v. ATP TITAN M/V*, 551 Fed. App'x 749 (5th Cir. 2014) and *Mendez v. Anadarko Petroleum Corp.*, 466 Fed. App'x 326 (5th Cir. 2012). After discussing these cases, and then the *Deepwater Horizon*, relied upon by Plaintiff, the Magistrate addresses head on the Plaintiff's primary arguments, which are the historical classification of semi-submersible drilling rigs as vessels, and the *Stewart* case holding the SUPER SCOOP dredge was not a vessel. Ultimately, taking into account all of the information before the Court, and the applicable law, in the Magistrate Judge's view (which is correct), the INNOVATOR is more like the BIG FOOT in *Baker* than the SUPER SCOOP in *Stewart*. Certainly, Plaintiff cannot be implying that the Magistrate Judge did not utilize her discussion of these other cases *(Warrior Energy* and *Mendez*, cases that the Plaintiff never discussed or distinguished in its briefing) in making her recommendation. From the context of the Recommendation as a whole, the Magistrate Judge most certainly takes into account all of the cases she discusses in reaching her ultimate conclusion and recommendation.

[17] Again, the Recommendation must be read as a whole to understand where the ultimate decision comes from. The Magistrate Judge discusses the post-*Lozman* cases in particular detail and in context to the facts before the Court about the INNOVATOR as part of her thorough evaluation of the applicable law and facts.

In reaching this conclusion, several factors were important to he Magistrate Judge. First is the fact that the SUPER SCOOP, unlike the INNOVATOR, was not only capable of being used to transport workers and equipment over water, it was actually used to transport those things. In fact, the SUPER SCOOP could not have performed its job digging the Ted Williams tunnel had it not been able to traverse the Boston Harbor carrying workers. While the INNOVATOR can be moved by line-men while not berthed, it does not reposition itself and is stationary,[18] unlike the SUPER SCOOP which had the ability to reposition itself and routinely did so in order to dig the trench. This was done with crew and equipment onboard.

Next is the fact that the BIG FOOT, like the INNOVATOR, ultimately was to be anchored to the seabed after it was towed into position offshore, where it was to remain for its useful life. Further, the BIG FOOT, like the INNOVATOR, is not capable of self-propulsion, has no steering mechanism, has no rudder, does not have a raked bow, and has no thrusters. The structures were not to be used as transporters or people or cargo, other than having a crew on board incidentally during the towing process.

Based upon the differences between the INNOVATOR and SUPER SCOOP, and similarities between the INNOVATOR and the BIG FOOT, discussed above, and acknowledging the that the INNOVATOR still has characteristics of a semi-submersible drilling rig, and therefore has characteristics of floating structures that have been held to be vessels, the Magistrate Judge believes the INNOVATOR more analogous to the BIG FOOT, a non-vessel.

Given the statements in the Recommendation, it is readily apparent that the Magistrate

---

[18] Stationary in the sense that it is not like a dredge, which is designed and by function crawls along while it continually digs trenches out of the harbor bottom.

Judge took into account the evidence submitted by the Plaintiff as to the remaining semi-submersible characteristics of the INNOVATOR, so Plaintiff's complaints in this regard are not well founded. Magistrate Judge Ellington correctly considered all of the evidence and arguments of the parties in making its well founded Recommendation, which should be adopted by the District Judge. For the foregoing reasons, Plaintiff's second attack or objection under Section C should be overruled.

3.      Plaintiff next attacks[19] the Magistrate Judge's Recommendation for not expressly discussing the case of *Louisiana Int'l Marine, L.L.C. v. The DRILLING RIG ATLAS CENTURY*, 2012 U.S. Dist. LEXIS 40781 (S.D. Tex. 2012) in the Recommendation. As Plaintiff admits, the *ATLAS CENTURY* case follows the legion of Fifth Circuit cases regularly finding semi-submersible rigs to be vessels. Dkt. No. 30-1 at p. 19. It is certainly correct to state that the Magistrate Judge does not expressly discuss this case by name in the Recommendation. However, the Magistrate Judge does acknowledge the Plaintiff's argument by stating generally that the Plaintiff relies in part upon the historical classification of semi-submersible drilling rigs as vessels. Dkt. No. 29 at p. 10. The *ATLAS CENTURY* case is just one of the legion of such cases.

With the above said, the failure of the Magistrate Judge to mention the *ATLAS CENTURY* case by name, as well as the other legion of cases Plaintiff puts forward, does not mean the Magistrate Judge ignored the Plaintiff's argument. To the contrary, the fact that the Magistrate Judge specifically mentions Plaintiff's argument and its citation to these cases verifies that the Magistrate Judge considered and rejected Plaintiff's argument based upon this line of cases,

---

[19]     Dkt. No. 30-1 at p. 19.

which includes the *ATLAS CENTURY* case.

In reading the *ATLAS CENTURY* case, which is pre-*Lozman*, it becomes apparent that there are multiple vessel status issues involved in the case, depending upon which entity was making a claim against the ATLAS CENTURY.[20] In terms of the claims where the ATLAS CENTURY was recommended by the Magistrate Judge in that case to be a vessel, those claims involved the question as to whether the ATLAS CENTURY, a vessel as a semi-submersible drilling rig, had been taken out of service or had become a dead ship, and thus was no longer a vessel. 2012 U.S. Dist. LEXIS 40781 at **15-24. This is an independent vessel status issue. See T.J. Schoenbaum, *Admiralty and Maritime Law* § 3-6 at pp. 155-156 (5th ed. 2011)(another difficult vessel status question is the dead ship question). As is important to our case, when discussing the issue of wet towing of the ATLAS CENTURY, the Magistrate Judge in that case acknowledged that a number of courts have refused to confer vessel status upon floating structures that were towed because those structures were permanently moored to the ocean floor. 2012 U.S. Dist. LEXIS 40781 at **21-23. For the ATLAS CENTURY, on the other hand, there was no evidence that the structure had ever been permanently moored at any time. In fact, the evidence was that the rig was highly mobile. *Id*. at **23-24.

Unlike the ATLAS CENTURY, the INNOVATOR has been moored to the seabed on a semi-permanent basis on the Mississippi Canyon block, as discussed by Magistrate Judge

---

[20] 2012 U.S. Dist. LEXIS 40781 at **9-224. Oddly enough, Plaintiff fails to discuss the fact that the ATLAS CENTURY is found to be a vessel as to claims by certain entities, and not to be a vessel as to claims by other entities. *Id*. The conflicting decisions are driven by and based upon the facts that apply to the different claims being asserted.

Ellington, and the future purpose of the structure through Amerindo's intent[21] is for it to be moored to the seabed for the remainder of its useful life, once it is towed to an offshore field. Given the purpose of the INNOVATOR, to be permanently moored to the seabed and serve as a production facility for the life of the field, its purpose is different from that of the ATLAS CENTURY.[22] Magistrate Judge Ellington correctly looked at and determined the relevant facts relating to functionality of the INNOVATOR, the facts pointing to the purpose of the INNOVATOR, and the applicable law post-*Lozman* to make her recommendation. She correctly applied these facts to the law to make her recommendation that the INNOVATOR is not a vessel. For the foregoing reasons, Plaintiff's third attack or objection under Section C should be overruled, and the Magistrate Judge's Recommendation should be adopted by you.

4. Plaintiff lastly attacks[23] the Magistrate Judge's Recommendation because it does not follow the *DEEPWATER HORIZON* case. This argument is yet another argument that the INNOVATOR should be treated as a semi-submersible drilling rig. In determining that the DEEPWATER HORIZON was a vessel, the District Court found it factually important that this drilling rig had a dynamic navigational positioning system which utilized trusters (propulsion) to

---

[21] While Plaintiff argues that Amerindo's intent should not be considered, the intent of the owner in the *ATLAS CENTURY* case is center stage. The case states "the Fifth Circuit .. recognizes a shipowner's intent may play a significant role in determining whether a structure was 'permanently moored' and therefore not practically capable of use as a means of transportation by water." 2012 U.S. Dist. LEXIS 40781 at *27, citing *De La Rosa v. St. Charles Gaming Co.*, 474 F.3d 185, 187 (5th Cir. 2006).

[22] The *ATLAS CENTURY* case teaches that the same structure can be a vessel and a non-vessel depending upon the facts that apply to the particular claimant. The decision is factual driven.

[23] Dkt. No. 30-1 at pp. 20-23.

maintain its position over the well.  It employed a satellite global positioning system device and complex thruster technology to stabilize itself.  Further, the only connection the DEEPWATER HORIZON had with the seabed was the drill sting connected to the blowout preventer, which was connected to the well head.  Also significant to the District Court was the fact that all parties except one (Cameron) agreed the DEEPWATER HORIZON was a vessel. 808 F.Supp.2d at 949-50.

On the other hand, the INNOVATOR has no propulsion system, and certainly no navigational positioning system with complex thruster technology to hold it in place, so it is not like the DEEPWATER HORIZON in terms of the critical ability to self-navigate.  When on location, the INNOVATOR, unlike the DEEPWATER HORIZON, is permanently connected to the seabed by a series of anchors, to the wellhead production pipes, and to transportation pipelines.  The INNOVATOR is to remain in place for the life of the field.  Presumably this was not the case for the drilling rig DEEPWATER HORIZON.  Despite these significant differences, Plaintiff takes issue that the Magistrate Judge does not discuss certain unspecified similarities between the INNOVATOR and the DEEPWATER HORIZON.[24]  This failure simply means that the Magistrate Judge does not agree with the Plaintiff's argument, nothing more.  Nevertheless, it is readily apparent from the discussion above that the structures are quite different in purpose and navigational abilities.

Plaintiff then takes issue with the Magistrate Judge's citation to and discussion of the

---

[24] Plaintiff does not address how or why this failure to discuss the similarities between the two changes the outcome of the Magistrate Judge's Recommendation.  Plaintiff seems to be arguing, as it does in the prior three attacks, that the Magistrate Judge should have been persuaded by the Plaintiff's arguments and cases, and not the arguments and cases cited by Amerindo.

*Warrior Energy* and *Mendez* cases, post-*Lozman* cases from the Fifth Circuit. The *Warrior Energy* case[25] involves the ATP TITAN, a structure designed and constructed by ATP to provide the same function as the ATP INNOVATOR, that being an offshore production facility. Plaintiff tries to distinguish the ATP TITAN from the ATP INNOVATOR by arguing that the INNOVATOR is not permanently moored to the seabed now, and by speculating that moving the structure will not be expensive.[26] However, that does not mean that the discussion about the ATP TITAN, a structure that is designed to perform a function in the exact same way as the ATP INNOVATOR, is not instructive to a determination of vessel status. To the contrary, the *Warrior Energy* case is as close as it can get to discussing whether a structure with the same purpose as the ATP TITAN (the ATP INNOVATOR) is a vessel, or more appropriately, is not a vessel, especially considering that the same company that put the ATP TITAN into service as a production facility put the ATP INNOVATOR into service for the exact same purpose.

The last argument Plaintiff makes relates to the *Mendez* case.[27] The arguments Plaintiff

---

[25] 551 Fed. App'x 749 (5th Cir. 2014).

[26] Plaintiff seems to argue that the INNOVATOR being located in Ingleside at a berth is seemingly dispositive of the vessel status issue, yet it cites no case that leads to this conclusion. This argument completely ignores why the INNOVATOR is in Ingleside in the first place. It is only there because the United States shut-in the operation and the structure had to be towed to Ingleside. This does not change the factual reality as to what the structure is designed to do, and how it accomplishes that mission. It does this by being permanently anchored to the seabed at an offshore oil and gas field location, attached by pipes to various wellheads, and further attached to transportation pipelines that transport the oil and gas to shore. That is the purpose of the structure, which is exactly the same as the ATP TITAN, a non-vessel. The purpose is not to move from location to location like a drilling rig does, and there is no evidence in the record that the INNOVATOR will be continually moved from one location to another. This is simply Plaintiff's repeated argument that the INNOVATOR is mobile.

[27] 466 Fed. App'x 326 (5th Cir. 2012).

makes here are similar if not the same as the arguments it made about the *Warrior Energy* case. Plaintiff argues the INNOVATOR is not currently moored to the seabed, like the structure in *Mendez*. Further, as it has done previously on several occasions, Plaintiff discusses what it calls the mobility of the INNOVATOR and its capability of moving from place to place, even though the evidence in the record from Amerindo is that the INNOVATOR will not move from place to place. It is apparent that the Magistrate Judge discusses the *Mendez* case in her Recommendation because it is a post-*Lozman* Fifth Circuit case on vessel status, which makes it instructive.

As it turns out, the *Mendez* case holds a spud barge permanently moored to the seabed is a non-vessel, which ultimately supports the Magistrate Judge's Recommendation. Even though the barge had a shaped hull to facilitate movement from place to place, which means the barge was capable of movement and thus "mobile," the barge was designed to remain moored to the seabed for the life of the oil and gas field. *Id*. The Magistrate Judge apparently found the design purpose discussion in the *Mendez* case instructive, which it is. For the foregoing reasons, Plaintiff's fourth attack or objection under Section C should be overruled.

## II.

Contrary to Plaintiff's objections, the Magistrate Judge considered the cases cited by the parties, properly determined the applicable law, and then applied the facts before her to the applicable law in order to make her well reasoned Recommendation. Because Magistrate Judge Ellington properly applies the law to the facts, the Plaintiff's objections should be overruled, and her Recommendation should be adopted by you.

WHEREFORE, PREMISES CONSIDERED, Amerindo Services Ltd., solely in its capacity as Claimant, prays: (1) the Court overrule the Plaintiff's objections to the Magistrate

Judge's Recommendation and Memorandum; (2) the Court issue an order holding the ATP INNOVATOR is not a vessel, (2) because the ATP INNOVATOR is not a vessel, the Court vacate the arrest of the ATP INNOVATOR, and (3) for such other relief to which it may be justly entitled.

          Respectfully submitted,

By: /s/ Richard L. Gorman
    Richard L. Gorman
    State Bar No. 00784155
    Federal Bar No. 15685
    12335 Kingsride Ln. #354
    Houston, Texas 77024-4116
    Telephone: (832) 725-4026
    Facsimile: (713) 239-1020
    Email: rg@richardgormanlaw.com
    Attorney for Claimant
    Amerindo Services Ltd.

OF COUNSEL:

RICHARD GORMAN LAW

## CERTIFICATE OF SERVICE

    I hereby certify that on this 11th day of January 2017, a copy of the foregoing was served on counsel fo record *By Notice of Electronic Filing*.

          /s/ Richard L. Gorman
          Of Richard Gorman Law

01879.response.01/11/17