UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | |
|---|---|
| GULF MARINE FABRICATORS, LP<br><br>VERSUS<br><br>THE ATP INNOVATOR, bearing IMO No. 742, her tackle, furniture, apparel, appurtenances, etc., *in rem*,<br>AMERINDO SERVICES LTD, *in personam*<br>BLUE SKY LANGSA LTD, *in personam* | CIVIL ACTION NO. 2:16-cv-00430<br><br>IN ADMIRALTY,<br>F.R.C.P. 9(h) and Rule C |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

**NOW INTO COURT**, through undersigned counsel, comes complainant, Gulf Marine Fabricators, LP ("Gulf Marine"), who respectfully submits this Reply Memorandum in further support of its Motion for Review (R. Doc. 30) of the Magistrate Judge's Memorandum and Recommendation (R. Doc. 29). Gulf Marine submits this Reply Memorandum will be helpful to this Honorable Court in understanding the issues before it, the merits of Gulf Marine's position, and why the arguments of Amerindo Services, Ltd. ("Amerindo") are unavailing.

**I.    The Applicable Standard is "Probable Cause," yet the Magistrate Judge Applied a More Onerous Standard.**

To survive a Rule E motion to vacate, a plaintiff need only show "reasonable grounds for issuing the arrest warrant." *White Rosebay Shipping S.A. v. HNA Grp. Co., Ltd.*, No. C-12-096, 2012 WL 6858239, at *9 (S.D. Tex. Dec. 5, 2012) (citing *Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989)). "Reasonable grounds" is a standard of "probable cause," not "preponderance of the evidence." *See Olendorff Carriers GMBH & Co., KG v. Grand China Shipping (Hong Kong) Co., Ltd.*, No. 12-00074, 2013 WL 3937450, at *5 (S.D. Tex. July 30, 2012) (quoting

*Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *Naftomar Shipping and Trading Co. v. KMA Intern. S.A.*, No. V-11-2, 2011 WL 888951, at *2–3 (S.D. Tex. Mar. 10, 2011). Indeed, the Magistrate Judge cited with approval and seemingly endorsed the "probable cause" standard under Rule E, but she proceeded to apply the more-onerous "preponderance of the evidence" standard. (R. Doc. 29 at 4). Amerindo argues the Magistrate Judge's application of the "preponderance of the evidence" standard was correct, but Amerindo misses the mark. (R. Doc. 35 at 2–4).

For example, Amerindo attempts to discredit Gulf Marine's reliance on three noteworthy decisions—*Olendorff Carriers*, 2013 WL 3937450; *White Rosebay Shipping*, 2012 WL 6858239; and *Hawknet Ltd v. Overseas Shipping Agencies*, No. 07-5912, 2009 WL 1309854 (S.D.N.Y. May 6, 2009)—arguing these decisions are inapposite to Gulf Marine's argument. (R. Doc. 35 at 2). Put simply, Amerindo is wrong. *Olendorff Carriers*, *White Rosebay Shipping*, and *Hawknet* all clearly stand for the well-accepted proposition that, at the Rule E stage, and if jurisdictional discovery has not been conducted, a plaintiff is required only to show reasonable grounds, or probable cause, for the issuance of an arrest warrant to survive a motion to vacate the arrest. *See Olendorff Carriers*, 2013 WL 3937450, at *2–3; *White Rosebay Shipping*, 2012 WL 6858239, at *9; *Hawknet*, 2009 WL 1309854, at *1–2.

Furthermore, Amerindo altogether failed to address Gulf Marine's argument with respect to the Magistrate Judge's misplaced reliance on *Vinmar Int'l Ltd. v. M/T Clipper MAKISHIO*, No. H-09-3829, 2009 WL 6567104 (S.D. Tex. Dec. 9, 2009), and *Seatrade Group N.V. v. 6,785.5 Tons of Cement*, No. H-05-2771, 2005 WL 3878026 (S.D. Tex. Dec. 7, 2005). In her Memorandum and Recommendation, the Magistrate Judge relied upon *Vinmar* and *Seatrade* in employing the "preponderance of the evidence" standard. (R. Doc. 29 at 4). Yet, as noted in Gulf Marine's Motion for Review, the *Vinmar* and *Seatrade* decisions cite to the Eastern District of

Louisiana's decision in *Ocean Marine Mutual Insurance Association Europe O.V. v. M/V LIA*, No. 99-2515, 1999 WL 679671 (E.D. La. Aug. 27, 1999). (*See* R. Doc. 30-1 at 5–6). The *Ocean Marine* decision very clearly states that the applicable standard under Rule E is one of "probable cause." *Ocean Marine*, 1999 WL 679671, at *1. Respectfully, neither *Vinmar* nor *Seatrade* holds that the applicable standard is "preponderance of the evidence." Yet, Amerindo's Response fails to address this issue, only briefly citing to *Vinmar* and *Seatrade* and incorrectly arguing that those decisions stand for something which they do not.

Even further, Amerindo relies on case law which is entirely irrelevant to the applicable standard under Rule E. That is, Amerindo cites *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990); and *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). However, these decisions have absolutely nothing to do with Rule E of the Supplemental Rules for Admiralty or Maritime Claims. *Kokkonen*, *MCG, Inc.*, and *Ballew* are inapposite subject-matter jurisdiction cases that make no mention whatsoever of maritime law, Rule E, or the applicable standard thereunder. Thus, Gulf Marine suggests this Honorable Court should reject Amerindo's reliance on these cases and, instead, rely on the wealth of case law holding that the applicable standard is one of "reasonable grounds" or "probable cause." *See, e.g., ING Bank N.V. v. M/V PORTLAND*, No. 3:15-cv-00805-JWD-RLB, 2016 WL 3365426, at *4 (M.D. La. June 16, 2016); *Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l Shipping Co. Ltd.*, Nos. 15-490, 15-494, 15-496, 15-758, 15-814, 2015 WL 1781712, at *2 (E.D. La. Apr. 20, 2015); *Jensen v. Rollinger*, No. 13-CV-1095-DAE, 2014 WL 4539660, at *3 (W.D. Tex. Sept. 11, 2014); *Olendorff Carriers*, 2013 WL 3937450, at *2–3; *White Rosebay Shipping*, 2012 WL 6858239, at *9; *Austral Asia PTE Ltd. v. SE Shipping Lines PTE Ltd.*, No. 12-1600, 2012 WL 2567149, at *2 (E.D. La. July 2,

2012); *Flame S.A. v. M/V LYNX*, No. 1:10-cv-278, 2010 WL 10861354, at *2 (E.D. Tex. June 22, 2010); *Hawknet*, 2009 WL 1309854, at *1–2; *Ocean Marine*, 1999 WL 679671, at *1; *North of England Protecting and Indem. Ass'n v. M/V NARA*, No. Civ.A. 99-0464, 1999 WL 33116416, at *2 (E.D. La. Feb. 26, 1999).

Relatedly, the Supplemental Rules for Admiralty or Maritime Claims are *sui generis*. *See Atkins v. Fibre Disintegrating Co.*, 85 U.S. 272, 283–84 (1873); *Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1350 (5th Cir. 1981); *Triton Container Int'l., Ltd. v. Baltic Shipping Co.*, Civ.A. No. 95-0427, 1995 WL 608485, at *2 (E.D. La. Oct. 12, 1995). Indeed, Rule C and the protections afforded thereby stem from the unique characteristics of maritime commerce and, relatedly, the transitory nature of vessels. *See, e.g., Smith Maritime, Inc. v. Lay Drilling Barge Akpevweoghene*, No. 2:11-731, 2013 WL 140215, at *2 (W.D. La. Jan. 10, 2013); *Karl Senner, Inc. v. M/V ACADIAN VALOR*, 485 F. Supp. 287 (E.D. La. 1980). The arrest remedy authorized by Rule C (and the attachment remedy of Rule B) is designed to allow injured creditors of entities engaged in maritime commerce to obtain security for debts before that security disappears. *See Smith Maritime*, 2013 WL 140215, at *2. This is the precise reason the standard for effectuating an arrest under Rule C, and for surviving a motion to vacate under Rule E, is only "reasonable grounds" or "probable cause." This standard is unique to the maritime context, and a purpose thereof is to give effect to and not undermine the *sui generis* remedies available under the General Maritime Law. *See Cockett Marine Oil Ltd. v. M/V LION*, No. 11-464, 2011 WL 1833286, at *2 (E.D. La. May 12, 2011). Further, Gulf Marine shows that the Magistrate Judge's application of the "preponderance of the evidence" standard will create bad precedent, as it renders equivalent (1) the standard for a plaintiff to defeat a Rule E motion to vacate, and (2) the burden the plaintiff would bear at trial.

## II. Contrary to the Magistrate Judge's Conclusion, the ATP INNOVATOR is a Vessel under the General Maritime Law, and Amerindo's Motion to Vacate Should Be Denied.

First, Amerindo concedes the INNOVATOR was a vessel as a drilling rig but now argues that the design and function of the INNOVATOR have changed such that it is no longer a vessel. (*See* R. Doc. 35 at 5–6). Importantly, however, Gulf Marine presented evidence before the Magistrate Judge that directly contradicts Amerindo's position. The Declaration of Todd Ladd specifically states that the conversion to a production rig had no effect whatsoever on the vessel qualities of the rig and that the rig maintained its mobility. (*See* R. Doc. 23-2 at 2, ¶5). Mobility has always been the fundamental hallmark of why semi-submersible rigs fall under the umbrella of vessels. *See Scroggs v. Bis Salamis, Inc.*, No. 1:09-CV-1007, 2010 WL 3910563, at *7 (E.D. Tex. Oct. 5, 2010) (citing *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 358 (5th Cir. 1999); *Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 349 (5th Cir. 1998); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 WL 2714124, at *6 (S.D. Tex. July 10, 2008)).

Second, Amerindo's argument is self-serving and contrary to Amerindo's prior position on vessel status of the INNOVATOR. Amerindo previously took advantage of the INNOVATOR's vessel status to grant a ship mortgage to secure the financing for the purchase of the INNOVATOR (*See* R. Doc. 23-1, p. 5), but Amerindo now seeks to disavow vessel status when a lien claimant seeks to enforce a lien for non-payment of more than $800,000.00 in wharfage and related fees. This is improper and should not be endorsed by this Court.

Third, Amerindo's argument is based almost exclusively on the owner's alleged intent for the future use of the INNOVATOR, ignoring competent evidence presented by Gulf Marine. For example, Amerindo ignores the fact that the INNOVATOR is not attached to the seabed, is

mobile, and is designed to transform and is capable of transforming from a deep to shallow draft vessel by de-ballasting. (*See* Declaration of Todd Ladd, R. Doc. 23-2 at 1–2, ¶¶3, 4). That is, although the INNOVATOR was transformed from a drilling rig into a production rig, the transformation was in name only; the INNOVATOR was and still is a free-floating semi-submersible rig with inherent capabilities of moving from job site to job site. (*Id.* at 2, ¶5). Interestingly, Amerindo makes little mention of this evidence or the fact that the INNOVATOR is indistinguishable from other semi-submersible rigs, which are and always have been vessels under the General Maritime Law. *See, e.g., BW Offshore USA, LLC v. TVT Offshore AS*, 145 F. Supp. 3d 658. 662 (E.D. La. 2015) (citations omitted); *see also* R. Doc. 30-1 at 10–11 (citing cases).

  Despite the competent evidence submitted by Gulf Marine on the INNOVATOR's vessel characteristics and inherent mobility, Gulf Marine respectfully submits that the Magistrate Judge improperly accepted less-persuasive evidence that was submitted by Amerindo, an approach that Amerindo unsurprisingly endorses. In effect, however, the Magistrate Judge weighed evidence in reaching her conclusions, which was improper due to the fact that her Memorandum and Recommendation was issued prior to any discovery being had. Indeed, prior to discovery, "all conflicts between the facts contained in the parties' affidavits and other documentation" should have been resolved in Gulf Marine's favor. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000) (citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000)).

  Furthermore, by relying on the owner's intent for the future use of the INNOVATOR, as the Magistrate Judge's Memorandum and Recommendation does, and as Amerindo advocates, rig owners would be permitted to easily avoid maritime liens and vessel status by stating, for

{N3353470.1} 6

example, that the rig will be permanently attached to the seabed at some unknown time in the future for some indefinite, unknown period. Relying on a rig owner's vague and ambiguous "intent" is indisputably subjective, which is contrary to the Supreme Court's statement that vessel status must be determined by gauging objective manifestations, not subjective criteria. *See Lozman v. City of Rivera Beach, Fla.*, 133 S. Ct. 735, 744 (2013). Gulf Marine very explicitly made this point in its Motion for Review (*see* R. Doc. 30-1 at 11–12), yet Amerindo altogether failed to respond thereto.

Fourth, Amerindo also failed to respond to Gulf Marine's contention that, under the Magistrate Judge's reasoning, it is questionable whether any semi-submersible rig could qualify as a vessel under the General Maritime Law. (*See* R. Doc. 30-1 at 12). Contrary to the Magistrate Judge's Memorandum and Recommendation, all semi-submersible rigs require the assistance of tugs to move long distances, and very few rigs have a primary function of transporting people or things over water. Yet, semi-submersible rigs indistinguishable from the INNOVATOR have and will always be classified as vessels under the General Maritime Law. *See BW Offshore USA, LLC*, 145 F. Supp. 3d at 662 (citing *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 808 F. Supp. 2d 943, 949 (E.D. La. 2011), *aff'd sub nom. In re DEEPWATER HORIZON*, 745 F.3d 157, 166 (5th Cir. 2014)). Thus, if the Magistrate Judge's Memorandum and Recommendation is adopted by this Honorable Court, it will call into question decades-old jurisprudence on the classification of semi-submersible rigs as vessels under the General Maritime Law. Interestingly, Amerindo left this argument untouched.

Fifth, Amerindo unsuccessfully attempted to distinguish *Louisiana International Marine, L.L.C. v. The DRILLING RIG ATLAS CENTURY*, No. 11-186, 2012 WL 1029934 (S.D. Tex. Mar. 9, 2012), *adopted La. Int'l Marine, L.L.C. v. The DRILLING RIG ATLAS CENTURY*, No.

11-186, 2012 WL 1029703 (S.D. Tex. Mar. 26, 2012). The *Louisiana International Marine* decision is particularly instructive, as it addresses vessel status of a semi-submersible rig when the rig was, like the INNOVATOR, free-floating and dockside. *Id.* at *2. In *Louisiana International Marine*, the rig was arrested while berthed at a facility and while the rig was not attached, permanently or otherwise, to the seabed. *See id.* Thus, *Louisiana International Marine* is highly analogous to the Rule C arrest of the INNOVATOR. However, Amerindo attempts to discredit the *Louisiana International Marine* decision on the basis that it was decided prior to the Supreme Court's decision in *Lozman*. Yet, by the Supreme Court's own admission, *Lozman* was not intended to be a wide-reaching decision on the issue of vessel status. *See Lozman*, 133 S. Ct. at 745. Rather, *Lozman* applies only to "borderline cases" where vessel status is at issue. *See id.* Whether a semi-submersible rig or a rig with similar characteristics qualifies as a vessel under the General Maritime Law is and never has been a "borderline case." *See BW Offshore USA, LLC*, 145 F. Supp. 3d at 662 (citations omitted); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 808 F. Supp. 2d at 949, *aff'd sub nom. In re DEEPWATER HORIZON*, 745 F.3d at 166; *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 n.18 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009); *Manuel*, 135 F.3d at 349; *Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991).

What matters is that *Louisiana International Marine* was decided post-*Stewart v. Dutra Construction Co.*, 543 U.S. 481 (2005). The *Stewart* decision instructs that, in order to assess vessel status, courts are to determine whether the rig is "practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Id.* at 497. As noted above, Gulf Marine has submitted competent evidence that the INNOVATOR's

conversion from a drilling rig to a production rig had no effect whatsoever on the vessel qualities of the rig and that the rig maintained its mobility. (*See* Declaration of Todd Ladd, R. Doc. 23-2 at 2, ¶5). The owner's intent for the INNOVATOR's future use is irrelevant. Under the *Stewart* decision, which is binding Supreme Court jurisprudence, the INNOVATOR is a vessel.

Furthermore, it is important to note that the INNOVATOR is a free-floating structure and is not moored, neither permanently nor otherwise, to the seabed. Under the *Stewart* decision, the fact that a structure is not moored to the seabed is highly instructive on the issue of vessel status, as *Stewart* holds that "a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." *Stewart*, 543 U.S. at 494. This unquestionably distinguishes this case from the Fifth Circuit's decisions in *Warrior Energy Services Corp. v. ATP Titan M/V*, 551 F. App'x 749 (5th Cir. 2014) (per curiam) (unpublished), and *Mendez v. Anadarko Petroleum Corp.*, 466 F. App'x 316 (5th Cir. 2012) (per curiam) (unpublished). Indeed, in both *Warrior Energy* and *Mendez*, the court concluded the structures-at-issue were not vessels because those structures were "permanently moored" to the seabed. *Warrior Energy*, 551 F. App'x at 752; *Mendez*, 466 F. App'x at 318–19. Here, the INNOVATOR is not permanently moored to the seabed, and Gulf Marine has submitted competent evidence that the INNOVATOR's conversion from a drilling rig to a production rig had no effect whatsoever on the vessel qualities of the rig and that the rig maintained its mobility. (*See* Declaration of Todd Ladd, R. Doc. 23-2 at 2, ¶5).

Still, Amerindo takes issue with a perceived lack of case law for Gulf Marine's position. Yet, Gulf Marine offers a simple explanation: The reason there is a dearth of case law regarding the vessel status of free-floating structures, like the INNOVATOR, is because vessel status is rarely challenged in such situations. Instead, under *Stewart*, free-floating structures not attached

to the seabed are clearly and indisputably considered vessels under the General Maritime Law. *See X-Drill Holdings, Inc. v. Jack-Up Drilling Rig SE 83*, Dkt. No. 2:16-cv-00399 (S.D. Tex., Corpus Christi Division), R. Docs. 1 (Complaint), 2 (Motion for Issuance of Arrest Warrant), 6 (Order Granting Motion), 58 (Order Confirming Sale of Rig). In the referenced case of *X-Drill Holdings, Inc. v. Jack-Up Drilling Rig SE 83*, Dkt. No. 2:16-cv-00399 (S.D. Tex., Corpus Christi Division), a party seized a free-floating jack-up drilling rig under Rule B (and subsequently, Rule C) while the rig was berthed at Gulf Marine's facility. Pursuant to an order by a court in this district, the rig was sold at public auction in December of 2016 without any question of vessel status regarding a structure that is not materially distinguishable from the INNOVATOR. (*Id.*).

## CONCLUSION

For the foregoing reasons, Gulf Marine respectfully shows that the Magistrate Judge's Memorandum and Recommendation should not be adopted by this Court, as this Court should grant Gulf Marine's Motion for Review and deny Amerindo's Motion to Vacate the Rule C arrest of the INNOVATOR.

Alternatively, Gulf Marine respectfully requests leave to conduct jurisdictional discovery on the vessel status of the INNOVATOR. Gulf Marine respectfully requests 60 days to complete jurisdictional discovery.

Respectfully submitted,

*/s/ William C. Baldwin*
Lara D. Pringle (Texas Bar No. 24056164)
Jones Walker LLP
First City Tower
1001 Fannin Street, Suite 2450
Houston, Texas 77002
Telephone: (713) 437-1800
Facsimile: (713) 437-1810
Email: Lpringle@joneswalker.com

*Of Counsel:*
WILLIAM C. BALDWIN (#31613)
HANSFORD P. WOGAN (#34825)
Jones Walker LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8315
Facsimile:    (504) 589-8315
Email:  wbaldwin@joneswalker.com
          fwogan@joneswalker.com
**Attorneys for Gulf Marine Fabricators, LP**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to any non-CM/ECF participants.

*/s/ William C. Baldwin*