IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GULF MARINE FABRICATORS, LP, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | C.A. NO. 2:16-cv-00430 |
| | § | |
| THE ATP INNOVATOR, bearing IMO | § | Admiralty - Federal Rule 9(h) |
| No. 742, her tackle, furniture, apparel, | § | |
| appurtenances, etc., *in rem*, and AMERINDO | § | |
| SERVICES LTD., and BLUE SKY LANGSA | § | |
| LTD., *in personam*, | § | |
|     Defendants | § | |

**DEFENDANTS' RESPONSE TO OMEGA'S MOTION TO INTERVENE**

TO THE COURT:

COME NOW *in personam* Defendants Amerindo Services Ltd. ("Amerindo"") and Blue Sky

Langsa Ltd. ("Blue Sky"), filing this Response to ASRC Energy Services Omega, LLC's ("Omega")

Motion to Intervene, and respectfully would show:

**I.**

**BACKGROUND**

The Court is familiar with the facts of the main action.  It is an alleged claim for monies

owed under a Layberth Agreement between Plaintiff Gulf Marine Fabricators, LP ("GMF") and the

*in personam* Defendants.  Plaintiff GMF sued the ATP INNOVATOR, *in rem*, and Amerindo and

Blue Sky, *in personam*.  Amerindo, as Claimant to the ATP INNOVATOR, has contested the status

of the structure as a "vessel," as that term is defined under the general maritime law in the maritime

lien context.  Magistrate Judge Ellington has issued a Memorandum and Recommendation.

Objections and responses have been filed, and the matter is before the Court for decision.

For that matter, the Court is familiar with some of the underlying facts related to the proposed intervention, as some of the exact claims were the subject of a prior lawsuit dismissed by this Court, which was C.A. No. 2:14-cv-448. Omega again seeks to pursue claims in this Court under the Louisiana Oil Well Lien Act La., R.S. 9:4861 ("LOWLA"), for alleged non-payment on services rendered to ATP Oil & Gas Corporation, not to Amerindo or Blue Sky. In addition, Omega desires to assert claims against the ATP INNOVATOR, *in rem*, as the alleged assignee on a Note and Preferred Ship Mortgage that Omega claims to have received from ATP Infrastructure Partners, LP, the defendant in the Louisiana case and the case dismissed by this Court.[1]

Further, as this Court is aware, Omega has mounted a multi-prong litigation attack to attempt to collect the debts Omega alleges are owed to it by ATP Oil & Gas. This multi-prong attack continues. This Court already knows about the pending action in the Eastern District of Louisiana[2] in which Omega has asserted the same claims under the LOWLA. What the Court does not know is that Omega recently moved to re-open the case to dismiss ATP Infrastructure as a party, and substitute Amerindo as Defendant.[3] This Court also is aware of the bankruptcy proceeding in this

---

[1]     It is unknown what the consideration was paid for the claimed assignment. What is known is that Omega was pursuing ATP Infrastructure for its substantial claims under the LOWLA. Meanwhile, ATP Infrastructure held the mortgage and note on the ATP INNOVATOR. It only seems logical that if there was an assignment, as asserted, that ATP's outstanding debt potentially was exchanged for the mortgage and note, at least in some part, if not in whole. If that is the case, then the alleged LOWLA debt Omega seeks to pursue in this case could be satisfied, as Omega is only allowed one recovery.

[2]     C.A. No. 2:13-cv-4985. This case is administratively closed pending a decision from the bankruptcy court on Omega's allowed administrative claim.

[3]     A copy of the motion filed by Omega is attached as Ex. A for the Court's reference.

Court.[4]  What the Court may not know is that the adversary proceeding filed by Omega was dismissed, primarily because of this Court's prior dismissal of the above referenced case filed in Corpus Christi.[5]  While the adversary proceeding has been dismissed, the undersigned can find no entry in the bankruptcy court's docket stating that Omega's allowed administrative claim in the amount of $649,026.47 has been settled, waived or resolved, so the claim is still pending, at least as far as one can tell from the court's docket entries.

By way of summation, while there have been changes in terms of the pending actions, nothing has changed substantively.  Omega appears to still have (1) an allowed administrative claim in the Chapter 7 bankruptcy in the Southern District of Texas, Houston Division, and (2) the federal court action pending in New Orleans that is administratively closed, but which Omega again seeks to re-open.  Omega now seeks to continue its multi-pronged attack by intervening in this case.

## II.

## LEGAL STANDARDS

Omega seeks intervene as a matter of right and through permissive intervention.  Intervention as of right is governed by Rule 24(a)(2) of the Federal Rules of Civil Procedure.  As was stated in *International Tank Terminals, Ltd. v. M/V ACADIA FOREST*, four requirements must be met to intervene as of right: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his

---

[4]     C.A. No. 4:12-br-36187.

[5]     A copy of the dismissal order and decision are attached as Ex. B for the Court's reference.

ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." 579 F.2d 964, 967 (5th Cir. 1978); *see also New Orleans Public Service, Inc. ("NOPSI") v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)(en banc). <u>A failure to satisfy any one of the four requirements precludes intervention as of right</u>. *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)(en banc)(emphasis added).

For the second requirement, which is what is critical here, intervention of right "requires a direct, substantial, legally protectable interest in the proceedings." *NOPSI*, 732 F.2d at 463, quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.), cert. denied sub nom., *Trefina A.G. v. United States*, 400 U.S. 878 (1970). By requiring that the applicant's interest be not only "direct" and "substantial," but also "legally protectable," something greater than an economic interest is necessary. *NOPSI*, 732 F.2d at 464. "What is required is that the interest be one which the *substantive law* recognizes as belonging to or being owned by the applicant." *Id*.

What is also required is that the applicant be the real party in interest, as "a party has no standing to assert a right if it is not his own." *Id.*, quoting *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969). The real party in interest is the party that, through substantive law, holds the right sought to be enforced. *Id.* A party must be the real party in interest to satisfy requirement (2).

For permissive intervention under Rule 24(b), a district court has discretion to allow an intervention when "(1) timely application is made by the intervenor, (2) the intervenor's claim of defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Bear Ranch LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 318 (S.D. Tex. 2012), quoting *League of United Latin Am.*

-4-

*Citizens v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). Even if the foregoing elements are present, it is wholly within the discretion of the district court to deny the intervention. *Bear Ranch*, 286 F.R.D. at 318, citing *NOPSI*, 732 F.2d at 471.

## III.

## ARGUMENTS AND AUTHORITIES

The intervention should be denied for all the following reasons. Sections A, B and C address the request for intervention of right, and more specifically requirement (2) of the Fifth Circuit test. Section D addresses Omega's request for permissive intervention, and more particularly Omega's bold and unsupported claim that the two matters involve the same facts and law, and that there will be no prejudice to the parties to the main action.

**A.     Intervenor's *in rem* Complaint is legally and procedurally deficient.**

Omega's proposed Complaint in part attempts to assert a maritime lien[6] in the form of an alleged preferred ship mortgage through an *in rem* claim against the ATP INNOVATOR. [Dkt. No. 39-1]. Rule C(2)(a) of the Supplemental Rules for Admiralty and Maritime Claims & Asset Forfeiture Actions mandates that the Complaint to enforce any maritime lien be verified. In reviewing the proposed Complaint filed by Intervenor, the undersigned can find no verification attached to the proposed Complaint. For this reason, the Complaint is legally and procedurally deficient to assert an *in rem* claim against the ATP INNOVATOR, and thus to allow for an intervention on the *in rem* claim. *See Sea Hunt, Inc. v. Unidentified, Shipwrecked Vessel or Vessels,*

---

[6]     The Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, which replaced the Ship Mortgage Act, provides for a preferred ship mortgage that places a maritime lien on the mortgaged vessel. 1 T.J. Schoenbaum, *Admiralty and Maritime Law* § 9-5 at p. 714 (5th ed. 2011).

181 F.R.D. 325, 327 (E.D.Va. 1998)(intervention Complaint must be verified).  Under the current state of the paperwork, the intervention should be denied.  *Id.*

**B.     No Evidence that Intervenor is a Real Party in Interest**.

As stated above, part of what is required to intervene of right is that the applicant must be the real party in interest, as "a party has no standing to assert a right if it is not his own."  *NOPSI*, 732 F.2d at 463, quoting *936.71 Acres of Land*, 418 F.2d at 556.  The real party in interest is the party that, through *substantive law*, holds the right sought to be enforced.  *Id.*

Here, Intervenor claims to be the holder of a note and preferred ship mortgage through an assignment from ATP Infrastructure Partners, L.P.  While the note, mortgage and purported assignments (note and mortgage) are attached to Intervenor's memorandum,[7] there is no indication, either stamped on the assignment[8] or through declaration of a witness, establishing that the assignment of the mortgage or note has been filed with the National Vessel Documentation Center, or with the Secretary of Transportation.[9]

A preferred mortgage must be filed in substantial compliance with 46 U.S.C. § 31321.  46 U.S.C. § 31322(a)(2).  Section 31321 provides that a bill of sale, conveyance, mortgage, <u>assignment</u> or related instrument on a vessel must be filed with the Secretary of Transportation to be valid.  46

---

[7]         *See* Dkt Nos. 40-1 and 40-3.

[8]         The unanswered question about the purported assignment is what consideration was paid for this assignment.  Certainly ATP did not just give the note and mortgage to Omega for free. If consideration was paid, how much?  Further, were Intervenor's claims under the LOWLA against certain ATP entities forgiven in exchange for the note and mortgage?  The answer to these questions certainly impacts the validity of the proposed intervention.

[9]         While the first preferred mortgage bears the stamp of the NVDC USCG, this was the filing of the original mortgage in September of 2015, and not filing of the assignment effective January 18, 2017.

U.S.C. § 31321(a)(1) (emphasis added).  Consequently, the instrument, or the assignment in this case, only becomes valid upon filing.  *Id*.  Since there is no evidence before this Court of the required filing with the Secretary of Transportation[10], the assignment is not valid and Intervenor has no current standing to assert the maritime lien.  *See Int'l Marine Research Inst., Inc. v. Rumpel*, 434 F.Supp.2d 1304, 1311-12 (M.D. Fla. 2006)(letter asserted to be a mortgage that did not meet the filing requirements of the CIMLA cannot create a maritime lien).

Further, there is no evidence that the Intervenor satisfies the citizenship requirements of the CIMLA, and that the declaration of citizenship required for a transfer of interest has been filed.  As stated in Section 31306, an instrument transferring an interest in a vessel is not valid against any person until the declaration required by this section has been filed.  46 U.S.C. § 31306.  Because the Intervenor has not provided any evidence that the declaration of citizenship has been filed, Intervenor lacks statutory standing to assert a maritime lien.  *Id*.

For the above reasons, and on the current record before this Court, Omega cannot assert  a maritime lien in the form of a preferred ship mortgage against the ATP INNOVATOR, so its request intervention should be denied.

---

[10]     In fact, the evidence is to the contrary.  Exhibit C attached is a true and correct copy of the Abstract of Title for the ATP INNOVATOR dated as of February 28, 2017.  It does not show the claimed assignment.

C.    __No Vessel, No Preferred Ship Mortgage__.[11]

If the Court ultimately decides that the ATP INNOVATOR is not a vessel, then there can be

no preferred ship mortgage on the structure allowing for the sale of the INNOVATOR to satisfy the

mortgage.[12]   *See Roy Anderson Corp. v. Treasure Bay Gaming & Resorts*, 205 B.R. 490, 494

(S.D.Miss. 1997)(casino had to qualify as a vessel for there to be a preferred ship mortgage on the

structure).  As is critical to the issue, 46 U.S.C. § 31322 requires the structure to be a vessel for there

to be a preferred ship mortgage.  *Roy Anderson Corp.*, 205 B.R. at 494.  46 U.S.C. § 115 states "[i]n

this title, the term 'vessel' has the meaning given that term in section 3 of title 1."  Consequently,

the CMILA defines the term "vessel" by adopting the definition in the general maritime law.  *Roy*

*Anderson Corp.*, 205 B.R. at 497.  Thus, in terms of defining the term "vessel" for purposes of

whether a preferred ship mortgage exists, we are applying the same definition of "vessel" as is

applied for purposes of whether a maritime lien exists, because both define term under section 3 of

title 1.

This exact issue (the question of vessel status) is the subject of Magistrate Judge Ellington's

Memorandum and Recommendation that the ATP INNOVATOR.  The recommendation has

determined the ATP INNOVATOR is not a vessel.  Under these circumstances, at the very least,

intervention should be held in abeyance until the ultimate decision by the Court on the vessel status

---

[11]    As the Court is aware, Magistrate Judge Ellington has recommended to the District Judge a holding that the ATP INNOVATOR is not a vessel for maritime lien purposes. Dkt. No. 29. Objections and responses have been filed, and a decision on the issue is pending.  How this question gets decided has a bearing on the issue of whether there can be a preferred ship mortgage on the ATP INNOVATOR, as the definition of "vessel" is the same.

[12]    What this means in the current context is that if there is no vessel, the substantive law does not recognize a preferred ship mortgage to allow for foreclosure of the vessel under Section 31325 of the CIMLA.  *See* 46 U.S.C. § 31325.

question.  If the District Court adopts the Magistrate Judge's Memorandum and Recommendation, then the intervention should be denied because there is no preferred ship mortgage.  *Roy Anderson Corp.*, 205 B.R. at 497.

**D.**     **Court Should Exercise its Discretion to Deny Permissive Intervention**.

As this Court is aware, Omega's attempted intervention into this case is not the first time this Plaintiff has filed a case in Texas that ended up in this Court specifically relating to its claims under the LOWLA.  The checkered history of Omega's claims is well known to this Court.[13]  However, there is a new twist to the story Intervenor failed to disclose to the Court.  From a review of the docket for the Eastern District of Louisiana, it has become known that on February 13, 2017, Omega filed a new motion to re-open that case in order to substitute Amerindo Services Ltd. as a defendant for ATP Infrastructure Partners, LP.  As of the filing of this response, there has been no ruling on that motion.  Also, as stated above, Omega's adversary proceeding has been dismissed for the reasons this Court dismissed the claims under the LOWLA.

In its constant pursuit of claims under the LOWLA that have been brought previously in Louisiana, in the bankruptcy court in Houston, and in this Court, Omega again seeks to pursue claims for alleged non-payment by ATP Oil & Gas for services requested by that company, not by Amerindo and Blue Sky.  Obviously, neither Amerindo nor Blue Sky were involved in any of these requests or transactions, and thus have no information about the transactions, and whether payments were made.  Because the facts of Omega's LOWLA claims have nothing to do with Amerindo and Blue Sky, these facts cannot be and are not the same as the facts of the main case involving alleged

---

[13]     See Ex. D attached, which is the order from this Court dismissing Omega's lawsuit in C.A. No. 2:14-cv-448.

non-payment by Amerindo and Blue Sky for obligations under a Layberth Agreement.  In all reality, the facts are completely separate, as are the facts related to any potential defenses to each claim.  The claims involve different companies, different people and different contracts.

Likewise, the law is not the same.  Plaintiff in the main action has not alleged claims under the LOWLA, as has been done by Omega.  For Omega to assert that the claims involve the same law, which it has done, means that Omega simply ignores the very nature of the claims that have been brought, and the nature of its own claims under Louisiana law.  The law that potentially applies to these claims is different.  Omega seeks to apply Louisiana law, while the Layberth Agreement seeks to apply the general maritime law of the United States or Texas law, as is applicable.[14]  As this Court can readily understand, the law and facts are not the same.  The claims are completely different, and involve different parties, the facts related to the transactions involved, and even different laws.

Further, regarding potential prejudice, delay and additional expense, the witnesses to the Omega transactions, and thus to its claims under the LOWLA are unknown to Amerindo and Blue Sky, since neither was a party to the underlying transactions.  It is not known by Amerindo and Blue Sky (1) who these witnesses are (presumably former employees of ATP Oil & Gas), (2) where there are now, and (3) whether they are even subject to the subpoena powers of this Court as non-parties.  Trying to sort this out will take time and add expense, which obviously is prejudicial to Amerindo and Blue Sky.  On the other hand, Amerindo and Blue Sky can easily identify the witnesses needed to defend the claims brought by GMF in the main action, as these entities were parties to the transaction.

---

[14]    *See* Dkt. No. 23-2 at p. 16 of 39, ¶ 13.1.

Even further still, as this Court previously recognized or is now aware, Omega has a pending allowed administrative claim in the bankruptcy, at least as far as can be determined from the bankruptcy court's docket sheet, has an action pending in the Eastern District of Louisiana which it seeks to re-open, and Omega still has not provided this Court with any reason that it could not simply preserve its rights under the LOWLA by filing a lis pendens in the records of any Texas County.  Nothing has changed since the Eastern District of Louisiana administratively closed its case.[15]  What ultimately happens with Omega's allowed administrative claim in the bankruptcy has a bearing on its alleged LOWLA claim and the amount of that claim.  What this means is that there will be a delay until this claim in the bankruptcy is decided.  This delay is unquestionably prejudicial to the parties to the main action.

In short, particularly if this Court determines that the ATP INNOVATOR is not a vessel, then the intervention should be denied for the above reasons, and for all of the reasons previously discussed by this Court's dismissal order (Dkt. No. 19 in C.A. No. 2:14-cv-448 - Ex. D attached).

WHEREFORE, PREMISES CONSIDERED, Defendants Amerindo Services Ltd. and Blue Sky Langsa  Ltd. pray that the Motion to Intervene of ASRC Energy Services Omega, LLC be denied, and such other and further relief to which they may be entitled.

---

[15]     The reasons the Court administratively closed the case still exist.  A copy of the Court's decision is attached as Ex. E.  The reasons were discussed by the Court more fully when it denied Omega's first motion to re-open the case.  That decision is attached as Ex. F.

Respectfully submitted,

By: _/s/ Richard L. Gorman_

      Richard L. Gorman
      State Bar No. 00784155
      Federal I.D. No. 15685
      12335 Kingsride Ln. #354
      Houston, Texas 77024-4116
      Telephone: (832) 725-4026
      Facsimile:   (713) 239-1020
      Email: rg@richardgormanlaw.com
      Attorney-in-Charge   for   *in   personam*
      Defendants Amerindo Services Ltd. and Blue
      Sky Langsa Ltd.

OF COUNSEL:

RICHARD GORMAN LAW

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 28th day of February, 2017, a true and correct copy of this pleading was served on all counsel of record *VIA **NOTICE OF ELECTRONIC FILING***.

      _/s/ Richard L. Gorman_
      Of Richard Gorman Law

01879.response.02/28/17