UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | |
|---|---|
| GULF MARINE FABRICATORS, LP<br><br>VERSUS<br><br>THE ATP INNOVATOR, bearing IMO No. 742, her tackle, furniture, apparel, appurtenances, etc., *in rem*,<br>AMERINDO SERVICES LTD., *in personam*,<br>and *BLUE SKY LANGSA LTD, in personam* | CIVIL ACTION NO. 2:16-cv-00430<br><br>IN ADMIRALTY,<br>F.R.C.P. 9(h) AND RULE C |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
BY GULF MARINE FABRICATORS, LP**

**MAY IT PLEASE THE COURT:**

Gulf Marine Fabricators, LP ("Gulf Marine"), moves for partial summary judgment pursuant to Fed. R. Civ. P. 56, on its breach of contract claims against Amerindo Services, Ltd, ("Amerindo") and Blue Sky Langsa Ltd ("Blue Sky"), *in personam*.[1]  There is no genuine issue of material fact with respect to Gulf Marine's breach of contract claims.  Gulf Marine provided services and equipment to Amerindo and Blue Sky, which have failed to pay Gulf Marine over $1,000,000.00.  For the reasons set forth below, Gulf Marine is entitled to summary judgment on these claims.

---

[1] Gulf Marine's instant Motion addresses only Gulf Marine's *in personam* claims against Amerindo and Blue Sky for breach of contract, and does not address Gulf Marine's maritime lien claim against the *in rem* defendant The ATP INNOVATOR.

{N3382657.3}

**FACTUAL AND PROCEDURAL BACKGROUND**

Amerindo was and is the registered owner of the ATP INNOVATOR, bearing IMO Number 742 and Official No. 575567 (hereinafter "INNOVATOR").[2] At all material times, the INNOVATOR was and still is a floating oil production rig, documented in the United States of America.

    A.    **The Layberth Agreement and Gulf Marine's Provision of Services and Equipment Thereunder**

Amerindo and Blue Sky, as owner and operator of the INNOVATOR, entered into a Layberth Agreement with Gulf Marine dated December 18, 2015 (the "Agreement"), pursuant to which Gulf Marine provided various services and/or personnel for the INNOVATOR, including but not limited to berthing and dockage, mooring services, horsepower, utilities and personnel while the INNOVATOR lay afloat at Gulf Marine's facility in Aransas Pass, Texas.[3] In addition to dockage services, Gulf Marine provided the following services and marine equipment to the INNOVATOR: (1) monthly spacer barge; (2) shore power; (3) equipment, including cranes and forklifts; (4) daily inspection; and (5) maintenance.[4]

Exhibit A to the Agreement outlined the schedule of fees that Amerindo and Blue Sky agreed to pay Gulf Marine.[5] Amerindo and Blue Sky agreed to pay Gulf Marine a monthly layberth fee of $55,000, as well as additional costs associated with the mooring and berthing of the INNOVATOR at Gulf Marine's facility and services and equipment provided to the

---

    [2]    R. Doc. 25, p. 2.

    [3]    Declaration of Todd Ladd, attached as Exhibit 1. A true and correct copy of the Agreement is attached as Exhibit A to Ladd's Declaration.

    [4]    *Id*.

    [5]    *Id*.

{N3382657.3}

INNOVATOR by Gulf Marine.[6]  Under the Agreement, interest is owed at the rate of 10% per annum for any and all amounts payable under the Agreement that were not paid when due.[7]

The Agreement calls for the application of General Maritime Law.[8]  The Agreement also provides that it terminates "if Owner has not made payment, in accordance with this Agreement, within fifteen (15) days of written notice from Shipyard of such non-payment."[9]  In the event of termination, Amerindo and Blue Sky are liable to pay Gulf Marine (1) any outstanding layberth fees; (2) compensation for materials, work or services provides; (3) interest due for late payment; and (4) costs incurred by Gulf Marine as a result of the termination.[10]  Additionally, the Agreement provided that Amerindo and Blue Sky are liable for a $100,000 liquidated damages payment as a result of not timely removing the INNOVATOR from Gulf Marine's facility.[11]  Under the Agreement, Gulf Marine is also entitled to unit rates and other charges for each day that the INNOVATOR remains at Gulf Marine's facility beyond the term of the Agreement.[12]  Further, the Agreement provides that Amerindo and Blue Sky agree to indemnify Gulf Marine

---

[6] *Id*.

[7] *See* Agreement, Exh. A to Ladd Declaration.

[8] *Id*. Specifically, Section 12 states in pertinent part:

The construction, validity and performance of this Agreement and all matters pertaining thereto shall in all respects be governed by the General Maritime Law of the United States, without regarding to or application of its conflicts of law provisions that would refer to the application of the laws of another jurisdiction.  In any event that the General Maritime Law of the United States does not apply or is held to be inapplicable by a court of competent jurisdiction, then the construction, validity and performance of this Agreement and all matters pertaining thereto shall in all respect be governed by the laws of the State of Texas, without regarding to or application of its conflicts of law provisions that would refer to the application of the laws of another jurisdiction.

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *See* Layberth Agreement, Section 11.3.

for any "losses, liabilities, expenses, interest, legal fees, costs of suit, and damages" due to a breach of the Agreement by Amerindo and Blue Sky.[13]

From November 2015 through present, in accordance with the terms of the Agreement, Gulf Marine invoiced Amerindo and Blue Sky for layberth fees as well as other services and equipment provided to the INNOVATOR.[14] Pursuant to Section 8 of the Agreement, invoices were submitted to Amerindo and Blue Sky in a timely manner.[15] Below is a table identifying the invoice number and the amount owed as per the invoices attached to the Declaration of Todd Ladd:

| Invoice # | Invoice Amount |
| --- | --- |
| 00003 | $78,363.20 |
| 00003 | ($21,402.23) |
| 00004 | $60,500.00 |
| 00005 | $28,342.45 |
| 00006 | $55,000.00 |
| 00007 | $20,570.16 |
| 00008 | $55,000.00 |
| 00009 | $55,000.00 |
| 00010 | $19,481.48 |
| 00011 | $55,000.00 |
| 00012 | $4,437.48 |
| 00013 | $19,621.00 |
| 00015 | $30,007.66 |
| 00016 | $55,000.00 |
| 00017 | $18,138.98 |
| 00018 | $55,000.00 |

---

[13] Id.

[14] See Exh. 1, Ladd Declaration.

[15] Id.

| | |
|---|---|
| 00019 | $20,112.73 |
| 00020 | $55,000.00 |
| 00021 | $19,430.81 |
| 00022 | $55,000.00 |
| 00023 | $19,298.21 |
| 00024 | $55,000.00 |
| 00025 | $18,444.58 |
| 00026 | $55,000.00 |
| 00027 | $18,168.26 |
| 00028 | $55,000.00 |
| 00029 | $18,723.76 |
| 00030 | $55,000.00 |
| 00031 | $19,886.44 |
| 00032 | $55,000.00 |
| 00033 | $19,077.45 |
| 00034 | $55,000.00 |
| 00035 | $19,121.27 |
| **TOTAL** | **$1,200,323.69** |

All of the above invoices are past due and remain unpaid.[16] Amerindo and Blue Sky delivered a security deposit to Gulf Marine in the amount of $165,000 which has not been applied to the amounts outstanding but should be deducted from amounts owed, thereby reducing the total amount outstanding to $1,035,323.69.[17]

---

[16] *Id*.

[17] Section 8.7 of the Agreement required Amerindo and Blue Sky to deliver $165,000.00 to Gulf Marine as security for its obligations under the Agreement. In accordance with the terms of the Agreement, Amerindo and Blue Sky delivered $165,000 to Gulf Marine as security. Under the Agreement, Gulf Marine is entitled to deduct or offset from this security any amount due and payable to Gulf Marine; however, to date, Gulf Marine has not offset the amounts owed by the $165,000 security deposit and the aforementioned figure of $1,200,323.69 in amount due to Gulf Marine does not include any deduction or offset for the $165,000 deposit.

On multiple occasions, Amerindo and Blue Sky acknowledged being delinquent under the Agreement and owing Gulf Marine for layberth fees and other services provided under the Agreement.[18]  On June 22, 2016, Gulf Marine put Amerindo and Blue Sky on formal written notice of default under the Agreement for failing to pay amounts due.[19]  On August 19, 2016, Gulf Marine filed a Notice of Claim of Lien on the INNOVATOR with the National Vessel Documentation Center and provided written notice upon Amerindo and Blue Sky of their continued default under the Agreement by serving a copy of the Notice on Amerindo and Blue Sky.[20]  In response, Amerindo and Blue Sky promised to "catch up" and make full payments to Gulf Marine; however, even with this Notice of Claim of Lien and repeated demands by Gulf Marine for payment, Amerindo and Blue Sky still failed to pay the amounts owed under the Agreement.[21]

### B.   Procedural Posture

On October 13, 2016, Gulf Marine filed a Verified Complaint against the INNOVATOR, *in rem*, and Amerindo and Blue Sky, *in personam*, stating admiralty and maritime claims within this Honorable Court's admiralty and maritime jurisdiction in accordance with Rule 9(h) of the Federal Rules of Civil Procedure and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. [*See* R. Doc. 1.]  Gulf Marine's Verified Complaint also sets forth a breach of contract claim against Amerindo and Blue Sky under the Agreement for non-payment for services provided, as well as other damages caused by their breach.  On October 14, 2016, this Court issued a Warrant for the arrest of the INNOVATOR pursuant to Rule C of the

---

[18]   *Id.*

[19]   *Id.*

[20]   *Id.*

[21]   *Id.*

Supplemental Rules for Certain Admiralty and Maritime Claims. [R. Doc. 10.][22] Amerindo and Blue Sky subsequently appeared and, on December 7, 2016, filed an Answer to Gulf Marine's Verified Complaint. [R. Doc 25.]

In their Answer, Amerindo and Blue Sky stated as follows:

> VII.
>
> Regarding the allegations in Paragraph 7 of the Complaint, Defendants admit a document entitled Layberth Agreement was signed on or about December 18, 2015, and that the parties to the agreement are stated as Gulf Marine Fabricators, LP, Amerindo Services Ltd. and Blue Sky.
>
> VIII.
>
> Regarding the allegations in Paragraph 8 of the Complaint, Defendants admit that Exhibit A to the Layberth Agreement states there is a lay berth fee of $55,000.00 per month, and that other fees are listed in the Exhibit. Defendants deny the remaining allegations contained in Paragraph 8 of the Complaint.

[*Id*. at pp. 2-3.] On March 24, 2017, with leave of Court, Gulf Marine filed a First Amended and Restated Complaint, setting forth additional causes of action and setting forth diversity jurisdiction as an additional source of subject matter jurisdiction. [R. Doc. 50.]

## LAW AND ARGUMENT

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that

> [summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

---

[22] Gulf Marine's maritime lien claims against the *in rem* defendant The ATP INNOVATOR are not at issue in the instant Motion for Partial Summary Judgment.

{N3382657.3}

7

The party seeking summary judgment (here, Gulf Marine) bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party (here, Amerindo and Blue Sky) may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 257; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *Anderson*, 477 U.S. at 255. Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to nonmovant's case on which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323, 106 S.Ct. at 2552–53.

    **B.**    **Components of Breach of Contract Claim under General Maritime Law**

Gulf Marine's breach of contract claims arise under General Maritime Law, as provided for by the governing law of the Agreement. However, "[t]o the extent that it is not inconsistent

with admiralty principles . . . state contract law may be applied to maritime contracts." *Ham Marine, Inc. v. Dressler Indus., Inc*., 72 F.3d 454,459 (5th Cir. 1995); *M P Zarat Ltd. v. Jumbo Nav. NV*, C.A. No. 05-4102, 2007 WL 7210408, at *3 (S.D. Tex. June 6, 2007)

"The core principles of Texas contract law are consistent with the general maritime law …." *Oceaneering Intern., Inc. v. Cross Logistics, Inc*., C.A. No. 11-3447, 2014 WL 2462810, *29 (S.D. Tex. June 2, 2014) (citing N. *Ins. Co. of New York v. Pelican Point Harbor, Inc*., 3:05CV184MCR/MD, 2006 WL 1285078, at *5 (N.D.Fla. May 5, 2006)) "[T]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Id*. (citing *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001))); *see also Hussong v. Schwan's Sales Enters., Inc*., 896 S.W.2d 320, 326 (Tex.App.-Houston [1st Dist.] 1995, *no writ*).

### C. Amerindo and Blue Sky Breached the Agreement with Gulf Marine

There are no genuine issues of fact regarding Amerindo and Blue Sky's breach of the Agreement. All four (4) elements of a breach of contract claim are established, and Gulf Marine is entitled to damages, as provided for by law and under the Agreement.

The Agreement is a valid contract by and between Gulf Marine and Amerindo and Blue Sky. Amerindo and Blue Sky have admitted that they are parties to the Agreement and that the Agreement was signed on or about December 18, 2015. [R. Doc. 25, p 2.] There is no genuine issue of fact regarding whether a valid contract exists.

Gulf Marine performed under the Agreement. Gulf Marine provided berthing and dockage to the INNOVATOR.[23] Gulf Marine also provided mooring services, horsepower, utilities and personnel while the INNOVATOR lay afloat at Gulf Marine's facility in Aransas Pass, Texas.[24] In addition, Gulf Marine provided the INNOVATOR with (1) monthly spacer barge; (2) shore power; (3) equipment, including cranes and forklifts; (4) daily inspection; and (5) maintenance.[25] There is no genuine issue of fact that Gulf Marine has performed under the Agreement and provided services as contracted for by Amerindo and Blue Sky.

Under the Agreement, Amerindo and Blue Sky agreed to pay Gulf Marine as outlined in Exhibit A to the Agreement.[26] Exhibit A provides a monthly layberth fee of $55,000, as well as additional costs associated with the mooring and berthing of the INNOVATOR at Gulf Marine's facility and services and equipment provided to the INNOVATOR by Gulf Marine.[27] Amerindo and Blue Sky have breached the contract by failing to pay Gulf Marine for berthing and dockage of the INNOVATOR, as well as for the daily work performed at Gulf Marine's facility. To date, there has been no payment by Amerindo and Blue Sky for these services.[28] There is no genuine issue of fact that Amerindo and Blue Sky have breached the Agreement by failing to pay Gulf Marine for services rendered.

Gulf Marine has sustained damages as a result of Amerindo and Blue Sky's breach in the amount of $1,200,323.69 for unpaid layberth fees and other services and equipment provided

---

[23]   Ladd Declaration, Exh. 1.

[24]   *Id.*

[25]   *Id.*

[26]   *Id.*

[27]   *Id.*

[28]   *Id.*

under the Agreement.[29] In addition, the Agreement provides for liquidated damages in the amount of $100,000 for failure to timely remove the INNOVATOR.[30] There is no genuine issue of fact that Gulf Marine has suffered damages as a result of Amerindo and Blue Sky's failure to pay Gulf Marine for services rendered.

> **D. Gulf Marine Is Entitled to Recover Damages Provided under the Agreement, as Well as Contractual Interest and Attorney's Fees for Non-Payment**

The failure of Amerindo and Blue Sky to pay amounts due within fifteen (15) days of written notice, is an enumerated event of default under the Agreement, entitling Gulf Marine to recover from Amerindo and Blue Sky under the Agreement. Specifically, the Agreement provides that it would terminate "if Owner has not made payment, in accordance with this Agreement, within fifteen (15) days of written notice from Shipyard of such non-payment." Given Amerindo and Blue Sky's non-payment and breach of the Agreement, Gulf Marine is entitled to damages as a result of this breach and termination.

In the event of termination, Amerindo and Blue Sky were and remain liable to pay Gulf Marine damages at outlined in Section 11.2 of the Agreement. Section 11.2 provides that in the event of termination, Amerindo and Blue Sky would be liable to pay Gulf Marine for the following: (1) any outstanding layberth fees; (2) compensation for materials, work or services provides; (3) interest due for late payment; and (4) costs incurred by Gulf Marine as a result of the termination. Section 10.2 provides that Amerindo and Blue Sky agree to indemnify Gulf Marine for any losses, liabilities, expenses, interest, legal fees, costs of suit, and damages as a result of a breach of the Agreement by Amerindo and Blue Sky.

---

[29] *Id*. As set forth above, this figure of $1,200,323.69 does not include any deduction or offset for the $165,000 deposit that Amerindo and Blue Sky made to Gulf Marine.

[30] *See* Agreement, Exh. A to Ladd Declaration.

Under the Agreement, Amerindo and Blue Sky agreed to pay Gulf Marine a monthly layberth fee of $55,000; and Amerindo and Blue Sky further agreed to pay Gulf Marine for materials, work and additional services. Pursuant to the Agreement, Gulf Marine provided monthly dockage to the INNOVATOR, as well as materials, work and additional services to the INNOVATOR as agreed to by Amerindo and Blue Sky. Amerindo and Blue Sky have not paid for any of these services or materials, which total approximately $1,200,323.69, as outlined in the invoices attached to Ladd's Declaration. When the deposit of $165,000 is deducted, the amount owed by Amerindo and Blue Sky at present equates to $1,035,323.69 for materials, work and services.

Amerindo and Blue Sky also owe Gulf Marine liquidated damages in the amount of $100,000.00 for failure to timely remove the INNOVATOR from Gulf Marine's facility. Furthermore, Amerindo and Blue Sky agreed to indemnify Gulf Marine for any losses, liabilities, expenses, interest, legal fees, costs of suit, and damages as a result of the breach of the Layberth Agreement by Amerindo and Blue Sky. Under the Agreement, Amerindo and Blue Sky agreed to pay Gulf Marine's attorney's fees and contractual interest at the rate of 10% per annum for any and all amounts payable under the Agreement that were not paid when due.

## CONCLUSION

For the reasons outlined above, Gulf Marine respectfully prays for summary judgment on its breach of contract claims against Amerindo and Blue Sky in the amount of $1,135,323.69,[31] plus any additional unpaid expenses, losses, and damages under the Agreement that continue to accrue, interest at the agreed upon rate of 10%, attorney's fees, and costs of suit. There is no genuine issue of material fact with respect to Gulf Marine's breach of contract claims, as a valid

---

[31] This figure is calculated by adding the $1,200,323.69 amount invoiced plus the $100,000.00 in liquidated damages, and then subtracting the $165,000.00 security deposit.

{N3382657.3}

contract exists, Gulf Marine performed under the contract, Amerindo and Blue Sky failed to pay for services rendered under the contract, and Gulf Marine has suffered damages, expenses and costs as a result of Amerindo and Blue Sky's breach. Gulf Marine is entitled to summary judgment on these claims.

Respectfully submitted,

*/s/ Lara D. Pringle*
Lara D. Pringle (Texas Bar No. 24056164)
Jones Walker LLP
First City Tower
1001 Fannin Street, Suite 2450
Houston, Texas 77002
Telephone: (713) 437-1800
Facsimile: (713) 437-1810
Email: lpringle@joneswalker.com

*Of Counsel:*

WILLIAM C. BALDWIN (#31613)
HANSFORD P. WOGAN (#34825)
Jones Walker LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8315
Facsimile:    (504) 589-8315
Email: wbaldwin@joneswalker.com
          fwogan@joneswalker.com

Attorneys for Gulf Marine Fabricators, LP

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of March, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to any non-CM/ECF participants.

/s/ *Lara D. Pringle*