UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | |
|---|---|
| GULF MARINE FABRICATORS, LP<br><br>VERSUS<br><br>THE ATP INNOVATOR, bearing IMO No. 742, her tackle, furniture, apparel, appurtenances, etc., *in rem*,<br>AMERINDO SERVICES LTD., *in personam*,<br>and *BLUE SKY LANGSA LTD, in personam* | CIVIL ACTION NO. 2:16-cv-00430<br><br>IN ADMIRALTY,<br>F.R.C.P. 9(h) AND RULE C |

### REPLY MEMORANDUM IN SUPPORT OF GULF MARINE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Complainant, Gulf Marine Fabricators, LP, ("Gulf Marine"), submits this Reply Memorandum to briefly address the arguments raised by defendants, Amerindo Services, Ltd, ("Amerindo") and Blue Sky Langsa Ltd ("Blue Sky") in their Opposition [R. Doc. 60].[1]

**1.   Amerindo and Blue Sky do not contest that they breached the Layberth Agreement, that the invoices issued by Gulf Marine are past due and remain unpaid, and that Amerindo and Blue Sky owe Gulf Marine money.**

At the outset, Gulf Marine notes that Amerindo and Blue Sky do not contest that (1) they breached the Layberth Agreement; (2) the invoices issued by Gulf Marine are past due and remain unpaid; and (3) Amerindo and Blue Sky owe Gulf Marine money.  Partial summary judgment in favor of Gulf Marine on its breach of contract claims is warranted because the principal amounts owed are uncontested, as discussed below.

---

[1]   Gulf Marine's Motion for Partial Summary Judgment addresses only Gulf Marine's *in personam* claims against Amerindo and Blue Sky for breach of contract, and does not address Gulf Marine's maritime lien claim against the *in rem* defendant The ATP INNOVATOR.

{N3403577.1}                                                    1

Amerindo and Blue Sky do not even respond to a number of Gulf Marine's Statement of Uncontested Facts, including Uncontested Fact Nos. 1, 4 – 10, 14 – 17. [R. Doc. 59.] The Uncontested Facts address *inter alia* the fact that Amerindo and Blue Sky entered into the Layberth Agreement with Gulf Marine; that Amerindo and Blue Sky were issued invoices for the monthly layberth fee and the additional costs associated with the mooring and berthing of the INNOVATOR at Gulf Marine's facility and services and equipment provided to the INNOVATOR by Gulf Marine; that the invoices were submitted timely, and remain past due and unpaid; and that Gulf Marine put Amerindo and Blue Sky on formal written notice of default under the Layberth Agreement. [*Id.*] Further, while Amerindo and Blue Sky object to certain Uncontested Facts (Nos. 2, 3, 11, 12 and 13), they do so in a limited fashion and/or without any evidentiary support.[2]

Rule 56 of the Federal Rules of Civil Procedure requires Amerindo and Blue Sky, in disputing Gulf Marine's Uncontested Facts, to "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Amerindo and Blue Sky have done neither. In fact, the only

---

[2] For example, Amerindo and Blue Sky object to Uncontested Fact Nos. 2 and 3 for semantic purposes on the basis that the INNOVATOR is "not a 'rig,'" that they do not know what the phrase "documented in the United States of America" means, and that they do not know what "personnel" Gulf Marine provided to the INNOVATOR. [*Id.*] Amerindo and Blue Sky object to Uncontested Fact No. 11 on the basis that Gulf Marine allegedly "fail[ed] to take into account the security deposit in the amount of $165,000" paid by Amerindo and Blue Sky. [*Id.*] Notably, Amerindo and Blue Sky do not object to the fact that invoices totaling $1,200,323.69 remain past due and unpaid. Further, Amerindo and Blue Sky do not offer any evidentiary proof, as required by Rule 56 of the Federal Rules of Civil Procedure, to establish that a security deposit was provided. Nonetheless, Amerindo and Blue Sky fail to note that Gulf Marine did, in fact, take the security deposit into account in its calculation of damages. [*See* R. Doc. 54-2, p. 12, n.31 ("This figure is calculated by adding the $1,200,323.69 amount invoiced plus the $100,000.00 in liquidated damages, and then subtracting the $165,000.00 security deposit.")]

"evidence" offered by Amerindo and Blue Sky in opposition of Gulf Marine's Motion for Summary Judgment is a print-out of a 2014 case out of the Eastern District of Louisiana.

"[T]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Oceaneering Intern., Inc. v. Cross Logistics, Inc*., C.A. No. 11-3447, 2014 WL 2462810, *29 (S.D. Tex. June 2, 2014) (citing *Smith Int'l, Inc. v. Eagle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001))). Amerindo and Blue Sky have not properly contested any of these essential elements, and partial summary judgment is therefore warranted with respect to Gulf Marine's claim for $1,200,323.69 in amounts invoiced to Amerindo and Blue Sky, less the $165,000 security deposit provided by Amerindo and Blue Sky to Gulf Marine.

### 2. Amerindo and Blue Sky owe $100,000 in liquidated damages as per the terms of the Layberth Agreement.

Amerindo and Blue Sky assert that Gulf Marine is not entitled to liquidated damages totaling $100,000 because the applicable liquidated damages clause is actually a penalty. [R. Doc. 60, p. 6.] [3]

The party arguing that liquidated damages are actually a penalty bears the burden of establishing this position. *Farmers Export Co. v. M/V Georgis Prois, Etc*., 799 F.2d 159, 162

---

[3] Amerindo and Blue Sky also contend that it has not been established when the Layberth Agreement was terminated. This is incorrect. As noted in Gulf Marine's Uncontested Fact No. 14, "[o]n June 22, 2016, Gulf Marine put Amerindo and Blue Sky on formal written notice of default under the Agreement for failing to pay amounts due." [R. Doc. 54-1, p. 4.] Amerindo and Blue Sky did not contest this Uncontested Fact in their 'Objections' [R. Doc. 59], and the fact should be considered admitted. By its terms, the Layberth Agreement is self-terminating such that it terminates on December 31, 2016 or, *inter alia*, "if Owner has not made payment, in accordance with this Agreement, within fifteen (15) days of written notice from Shipyard of such non-payment." [*See* Cl. 11.1 of the Layberth Agreement, R. Doc. 54-3, p. 16]. The Layberth Agreement terminated on December 31, 2016 and further terminated because of Amerindo/Blue Sky's failure to pay after 15 days written notice of non-payment.

(5th Cir. 1986).  Amerindo and Blue Sky argue that "[a]ll we have here is the clause itself, which states that there 'may' be damages. There is simply no evidence before this Court as to what Plaintiff's damages could be, or would be, which in and of itself precludes summary judgment under the reasoning applied in *Farmers Export*." [R. Doc. 60, p. 7.]  Yet, Amerindo and Blue Sky conveniently ignore certain language from the applicable clause of the Layberth Agreement.

The applicable clause from the Layberth Agreement reads in full:

> Owner hereby acknowledges that its failure to remove the Unit from the Shipyard on or before the end of the Term may result in damages to the Shipyard.  In the event this Agreement is terminated, and Owner fails to remove the Unit on or before such date stipulated in Section 11.1 or Section 11.4, Owner shall be assessed a liquidated damage in the amount of one hundred thousand ($100,000.00) payable in full no later than thirty (30) days after such termination.  <u>The Parties acknowledge and agree that it is difficult or impossible to determine with precision the amount of damages that would or might be incurred by Shipyard as a result of Owner's failure [*sic*] remove the Unit by the end of the Term.  It is understood and agreed by the Parties that: (i) Shipyard shall be damaged by failure of Owner to meet such obligations; (ii) it would be impracticable or extremely difficult to fix the actual damages resulting there from; (iii) any sums that would be payable under this Section 11.3 are in the nature of liquidated damages and not a penalty, and are fair and reasonable; and (iv) such payment represents a reasonable estimate of fair compensation for the losses that may reasonably be anticipated from some failure</u>.  Additionally, for each day the Unit remains at Shipyard's Facility beyond the Term, Owner shall be responsible for such unit rates and other charges as Shipyard may, in its sole and absolute discretion, charge.

[R. Doc. 54-3, p. 16, 'Clause 11.3' (emphasis added.)].

Despite acknowledging that it would be "impracticable or extremely difficult to fix the actual damages" when they entered into the Layberth Agreement, now that Amerindo and Blue Sky have breached the Layberth Agreement, they argue that Gulf Marine has not sufficiently fixed its damages.  Further, despite agreeing at the time that the $100,000 sum would be "in the

nature of liquidated damages and not a penalty," now that Amerindo and Blue Sky have breached the Layberth Agreement, they argue that the liquidated damages sum is actually a penalty. Moreover, despite expressly agreeing that the sum of $100,000 was "a reasonable estimate of fair compensation," Amerindo and Blue Sky now protest that figure. Obviously, at this stage, these arguments are not availing in light of the unambiguous contractual language and prior express admissions by Amerindo and Blue Sky.

Amerindo and Blue Sky's selective reading and presentation of Clause 11.3 of the Layberth Agreement to the Court is frivolous. Amerindo and Blue Sky cannot now, in the face of partial summary judgment, avoid paying damages they previously agreed to pay.

### 3. Amerindo and Blue Sky owe attorney's fees as per the terms of the Layberth Agreement.

Lastly, Amerindo and Blue Sky argue that Gulf Marine is not entitled to attorney's fees because the indemnity provision contained in the Layberth Agreement is a "general indemnity provision like those found in *Weathersby*, *Peter Fabrics*, and *In re Oil Spill*, so attorney's fees are not recoverable." [R. Doc. 60, p. 5.]. However, Amerindo and Blue Sky's reliance upon those three cases is misplaced since those cases addressed the recovery of attorney's fees for third-party and ancillary claims establishing a right to indemnity, not the recovery of fees incurred in a first-party context like the instant case. *See Weathersby v. Conoco Oil Co.*, 752 F.2d 953 (5th Cir. 1984) (addressing the right to recover attorney's fees in connection with establishing the right to indemnity on a cross-claim); *In re Oil Spill*, 841 F. Supp. 2d 988 (E.D. La. 2012) (holding that "Transocean cannot recover the attorney's fees, costs, and expenses it incurred to establish <u>its right to indemnification from BP</u>." (Emphasis added.)); *Peter Fabrics, Inc. v. SS HERMES*, 765 F.2d 306 (2d Cir. 1985) (noting that attorney's fees are not recoverable in establishing the existence of an obligation to indemnify).

In this case, Gulf Marine seeks attorney's fees as a direct damage (*i.e.*, a first-party claim) from Amerindo and Blue Sky's undisputed breach of the Layberth Agreement, not as a result of incurring fees to prove up the right to indemnity with respect to a third-party claim. In Clause 10.2 of the Layberth Agreement, Amerindo and Blue Sky expressly agreed to indemnify Gulf Marine for legal fees as a result of a breach of the Layberth Agreement by Amerindo and Blue Sky. [R. Doc. 54-3, p. 14, Clause 10.2]. Moreover, the Layberth Agreement calls for the recovery of "any such costs as [Gulf Marine] demonstrates as having been reasonably and directly incurred as a result of such termination." [*Id.*, p. 16, Clause 11.2]. But for Amerindo and Blue Sky's breach and the subsequent termination of the Layberth Agreement, Gulf Marine would not have incurred the attorney's fees it seeks to recover. Accordingly, Gulf Marine submits that it is entitled to recover attorney's fees from Amerindo and Blue Sky.

## CONCLUSION

For the reasons noted above in its Memorandum in Support [R. Doc. 54-2] and those set forth herein, Gulf Marine is entitled to and respectfully prays for partial summary judgment on its breach of contract claims against Amerindo and Blue Sky in the amount of $1,135,323.69[4] plus any additional unpaid expenses, losses, and damages under the Agreement that continue to accrue, interest at the agreed upon rate of 10%, attorney's fees, and costs of suit.

---

[4] This figure is calculated by adding the $1,200,323.69 amount invoiced plus the $100,000.00 in liquidated damages, and then subtracting the $165,000.00 security deposit.

Respectfully submitted,

*/s/ William C. Baldwin*
Lara D. Pringle (Texas Bar No. 24056164)
Jones Walker LLP
First City Tower
1001 Fannin Street, Suite 2450
Houston, Texas 77002
Telephone: (713) 437-1800
Facsimile: (713) 437-1810
Email: lpringle@joneswalker.com

*Of Counsel:*

WILLIAM C. BALDWIN (#31613)
HANSFORD P. WOGAN (#34825)
Jones Walker LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8315
Facsimile:    (504) 589-8315
Email: wbaldwin@joneswalker.com
         fwogan@joneswalker.com
         Attorneys for Gulf Marine Fabricators, LP

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.  I also certify that I have mailed this filing by United States Postal Service to any non-CM/ECF participants.

/s/ *William C. Baldwin*