IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GULF MARINE FABRICATORS, LP | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | C. A. No. 2:16-cv-00430 |
| | § | Rule 9(h) - Admiralty |
| THE ATP INNOVATOR, bearing IMO No. | § | |
| 742, her tackle, furniture, apparel, | § | |
| appurtenances, etc., *in rem*, and AMERINDO | § | |
| SERVICES LTD. and BLUE SKY LANGSA | § | |
| LTD., *in personam*, | § | |
|     Defendants. | § | |

### CLAIMANT'S MOTION TO DISMISS ARREST

TO THE COURT:

COMES NOW Amerindo Services Ltd., solely in its capacity as claimant to the ATP INNOVATOR ("Claimant"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, filing this Motion to Dismiss the arrest of the ATP INNOVATOR because the structure is not a vessel for purposes of Plaintiff asserting a maritime lien, and respectfully would show:

### I.

### PROCEDURAL BACKGROUND

Plaintiff filed its Original Complaint on October 13, 2016 [Dkt. No. 1], along with its Motion for Issuance of a Warrant of Arrest. [Dkt. No. 2]. A motion hearing was held on October 14, 2016, during which the Motion for Issuance of a Warrant was granted. [Dkt. No. 6]. A Warrant of Arrest was issued that same day, which apparently was served on the ATP INNOVATOR by the U.S. Marshal's office on October 17, 2016. The ATP INNOVATOR is unmanned, so there is no one on the ATP INNOVATOR to receive service on behalf of the Claimant. A Return of Service was filed by the U.S. Marshal on October 25, 2016, which

indicates that the papers were served by the U.S. Marshal on Chris Redding, Branch Manager for U.S. Security Associates. [Dkt. No. 19]. U.S. Security Associates is the Substitute Custodian ordered by the Court. [ *See* Dkt. No. 8]. Needless to say, Claimant never received service of the arrest papers. Apparently because of the foregoing, Plaintiff provided notice of the arrest by publication. In response to the notice by publication, Claimant filed its Claim of Owner on November 7, 2016. [Dkt. No. 20]. Claimant filed a motion to vacate the arrest. [Dkt. No. 21]. The Magistrate Judge recommended the motion be granted. [Dkt. No. 29]. The Court issued an order allowing this motion to be filed on or before July 5, 2017. [Dkt. No. 55]. Claimant now files this Motion to Dismiss the arrest claiming the ATP INNOVATOR is not a vessel for purposes of Plaintiff asserting a maritime lien, so there is no subject matter jurisdiction.

## II.

## FACTUAL BACKGROUND

Claimant Amerindo Services Ltd. is the owner of the ATP INNOVATOR, which is a special purpose platform used as oil and gas production infrastructure.[1] The ATP INNOVATOR currently is located in Aransas Pass, Texas at Plaintiff GM Fabricators LP's ("Gulf Marine") facility, where it has been berthed since December of 2015, pursuant to the terms of a Layberth Agreement entered into between Plaintiff, Amerindo Services Ltd. and Blue Sky Langsa Ltd.

As is relevant to the analysis for this Court, the ATP INNOVATOR: (1) has no engines for propulsion, so it must be towed (wet or dry)[2] if it is to move from one location to another, (2)

---

[1] *See* Dkt. No. 20.

[2] Wet towing is when the structure is towed through the water by means of towing vessels. A dry tow is when the structure is placed onto a special purpose heavy lift vessel and carried as cargo on the ship.

it has no thrusters to move it around, (3) it does not have a DGPS automated positioning system[3] to maintain its position automatically through thrusters, (4) it has no rudder or steering mechanism, (5) its primary purpose is not to transport people or cargo over water, (6) it does not have a raked bow, (7) it is designed and intended to be on location at a producing oil and gas field for a number of years, or as long as the field is operational, (8) once it is in place at an producing offshore oil and gas field, the job of the ATP INNOVATOR is to connect by pipe to various well heads to collect, process and separate oil and gas, and then transport the oil and gas by designated pipeline to the user located on shore, and (9) the ATP INNOVATOR is held in place at the field by means of mooring lines anchored to suction piles embedded into the seabed.[4] While the ATP INNOVATOR has eight mooring winches, two in each corner, the structure does not carry any anchors.[5] It has obstruction lights, but no navigation lights.[6] During a wet tow, navigation lights have to be supplied to the INNOVATOR.[7] A crew is required by the U.S. Coast Guard to be on board the structure during a wet tow. This is primarily for safety and

---

[3] DGPS stands for Differential Global Positioning System, which can keep a structure on location to within 10 centimeters under best circumstances.

[4] *See* Ex. 2 to Ex. A attached, which is the affidavit of Joseph Key attached to his deposition. *See also* Ex. A at p. 96, l. 20 - p. 97, l. 4; p. 85, ll. 16-18; p. 91, l. 24 - p. 94, l. 3; p. 94, ll. 4 - 11; p. 94, l. 12 - p. 95, l. 3.

[5] *See* Ex. A at 85, ll. 3 - 12; p. 94, ll. 12-25.

[6] *Id*. at p. 80, ll. 1 - 21.

[7] *Id*. The United States Supreme Court again addressed the issue of a structure being towed in *Lozman*, holding that the mere fact that a structure gets towed is insufficient to sustain a conclusion of vessel status. *Lozman v. City of Riviera Beach*, 133 S.Ct. 735, 742 (2013), citing *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19, 20-21 (1926)(wharfboat not a vessel even though towed to a harbor each winter to protect it from ice).

firefighting purposes.[8] Four members of a standard, on location operating crew need to have merchant marine licenses for the sole purpose of being able to operate the life boats on the structure in the event of an evacuation.[9] The foregoing being said, the structure has no assigned Master and no bridge.[10]

In 2006, the ATP INNOVATOR was converted from a semi-submersible offshore drilling rig to an offshore production facility.[11] After the land based portion of the conversion was completed, the ATP INNOVATOR was wet towed onto location in the Mississippi Canyon Block off the coast of Louisiana.[12] This was the only time the structure has moved voluntarily at the request of the owner/operator since the conversion.[13] After the conversion, the ATP INNOVATOR operated as a production facility on the Mississippi Canyon area of the Gulf of Mexico, off the Louisiana coast, connected to seabed and to oil and gas wells and pipelines.[14] In 2013, the United States government ordered the ATP INNOVATOR taken out of service and towed to Ingleside.[15] The ATP INNOVATOR was wet towed to Ingleside in early 2014, and has

---

[8] *See* Ex. A at p. 88, ll. 10 - 23; p. 97, ll. 5 - 16.

[9] *Id*. at p. 26, ll. 6 - 24; p. 27, ll. 10 - 15.

[10] *Id*. at p. 26, ll. 2 - 5; p. 84, ll. 8 - 12.

[11] *See* Dkt. No. 29 at p. 2. Lozman specifically discusses the issue of a transformed structure, indicating the newly designed structure is what is relevant. *Lozman*, 133 S.CT. At 745, citing *Kathriner v. Unisea, Inc.*, 975 F.2d 657, 660 (9th Cir. 1992)(floating processing plant no longer a vessel where large opening was cut into the hull).

[12] *See* Dkt. No. 29 at p. 2.

[13] *See* Ex. A at p. 87, l. 14 - p. 88, l. 8; p. 89, ll. 3 - 12.

[14] *See* Dkt. No. 29 at pp. 2 - 3.

[15] *Id*.

been stacked or sitting idle in Ingleside ever since.[16] It is important to note that the purpose of the structure is the same as it was when it was operating as a deepwater production facility off the coast of Louisiana.[17]

As is critical here, the ATP INNOVATOR is no longer a semi-submersible drilling rig, so cases involving semi-submersibles or jack-up drilling rigs have no application to the question of whether the ATP INNOVATOR, in its current state as an offshore production facility, is a vessel for maritime lien purposes.[18] Since being converted to an offshore production facility, the structure has moved twice: once from the Mississippi Canyon block to Ingleside, Texas at the mandate of the United States government, and once within the Gulf Marine facility in Ingleside at the mandate of Gulf Marine. The owner/operator of the structure has not voluntarily moved the structure since it was converted.[19] In terms of moving the ATP INNOVATOR onto location as a production facility in the future, it can be wet towed or dry towed. The most probably of these two possibilities is dry towage due to the distance and cost involved.[20]

### III.

### APPLICABLE LEGAL STANDARDS

Here, Plaintiff claims to have a maritime lien against the INNOVATOR pursuant to the

---

[16] *Id*.

[17] *See* Ex. A at p. 91, l. 22 - p. 93, l. 19.

[18] To convert the structure back to a semi-submersible drilling rig would require removing the production equipment, which would be very expensive. Amerindo has no plan to do this. *See* Ex. A at p. 89, l. 13 - p. 91, l. 9.

[19] *See* Ex. A at p. 87, l. 14 - p. 89, l. 12.

[20] *See* Ex. A at p. 95, l. 22 - p. 96, l. 10.

Maritime Lien Act, 46 U.S.C. § 31301, *et seq*., which states in part "a person providing necessaries to a vessel ... has a maritime lien on the vessel [and] may bring a civil action *in rem* to enforce the lien." 46 U.S.C. § 31342(a). Plaintiff agrees with this proposition of law, and that if the INNOVATOR is not a vessel, Plaintiff has no maritime lien under the Maritime Lien Act. The United States Supreme Court also agrees, stating federal jurisdiction under the Maritime Lien Act turns on whether the property seized is a vessel, as that term is defined in 1 U.S.C. § 3. *Lozman v. City of Riviera Beach,* FL, 133 S.Ct. 735, 745 (2013).

Because the question here is ultimately jurisdictional, Plaintiff must prove by a "preponderance of the evidence" that the Court has jurisdiction based upon the complaint and evidence. *Ballew v. Cont'l Airlines, Inc*., 668 F.3d 777, 781 (5th Cir. 2012), citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A court can find that subject matter jurisdiction is lacking based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew*, 668 F.3d at 781, quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### IV.
### LEGAL ARGUMENTS

In *Lozman v. City of Riviera Beach,* FL, 133 S.Ct. 735, 740-41 (2013), the United States Supreme Court emphasized that "[n]ot every floating structure is a vessel," and that the statutory definition codified at 1 U.S.C. § 3 "applies to an 'artificial contrivance ... capable of being used ... as a means of transportation on water.'" The Court cited the meaning of "transportation" as involving the "conveyance (of things or persons) from one place to another," and noted that this

definition must be applied "in a practical, not theoretical, way." *Id*. at 741.  The Court held that a structure does not fall withing the scope of this statutory phrase unless a reasonable observer, looking at the floating structure's physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water. *Id*.  In terms of the future application of the *Lozman* decision, one court has noted that the decision "sent a shot across the bow" of those lower courts whose "opinions [could] be read as endorsing the 'anything that floats' approach" to determining vessel status. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 2013 A.M.C. 567, 572-75 (S.D.N.Y. 2013)(dry dock not a vessel because not designed to a practical degree for carrying people and things over water).

In terms of applying *Lozman*, a review of *Martin v. Fab-Con, Inc.*, 9 F.Supp.3d 642, 649 (E.D. La. 2014) is instructive on how to apply the new guidelines.  In *Martin*, the court found that the UNITY was not a "vessel" for purposes of the general maritime law.  The UNITY was a quarters barge used as a floating hotel for workmen at the job site.  It did not have a rudder or an engine, and had to be spudded into place at the site.  The court reasoned that the reasonable observer would not believe that the UNITY was designed to a practical degree for transporting people or cargo over water. *Id*. at 649; *see also Higginbotham v. Drake Towing, L.L.C.*, 2016 A.M.C. 227 (E.D. La. 2015)(same).

Two other post-*Lozman* decisions are instructive here, if not determinative of the vessel status issue.[21]  The first is *Mooney v. W&T Offshore, Inc.*, 2013 A.M.C. 1480 (E.D. La. 2013).

---

[21] A pre-*Lozman* decision is also worthy of mention.  In *Mendez v. Anadarko Petroleum Corp.*, 466 Fed. Appx. 316 (5th Cir. 2012), the Fifth Circuit held that a floating production platform (the RED HAWK) permanently moored to the Outer Continental Shelf was not a vessel.  Although it floated, it was permanently moored by six mooring lines embedded into the sea floor.  Steel flow lines and export pipelines attached the spar to extraction points in one

The issue in the case was whether the MATTERHORN SEASTAR was a vessel under the general maritime law. The facts were that the structure had been on the Outer Continental Shelf on location for years, it was permanently attached to the seabed by a series of steel tubes, pontoons, tendons and pilings, and the structure was further connected to an oil export pipeline, a gas export pipeline and casing risers. Further, the function of the MATTERHORN SEASTAR was to process and separate oil and gas from various wellheads, and then transport the oil and gas to Louisiana via export pipelines. Lastly, the structure had no form of self-propulsion, no raked bow, and was intended to remain in position for the productive life of the reservoirs. *Id*. at 1487-88. For these reasons, the court held that it was not a vessel. *Id*. at 1489-90, citing *Moore v. Bis Salamis, Inc.*, 748 F.Supp.2d 598 (S.D. Tex. 2010)(large offshore oil production platform not a vessel); *Washington v. BP Am., Inc.*, No. 10-1486, 2012 WL 5831800 (W.D. LA. 2012)(same); *Rushing v. Pride Intern., Inc.*, No. 11-0294, 2011 WL 3021043 (S.D. Tex. 2011)(same); *Scroggs v. Bis Salamis, Inc.*, No. 09-1007, 2010 WL 3910563 (E.D. Tex. 2010)(same); *Abram v. Nabors Offshore Corp.*, No. 09-4091, 2010 WL 3433056 (S.D. Tex. 2010)(same).

The second case is *Warrior Energy Services Corp. v. ATP Titan*, 2014 A.M.C. 2514 (5th Cir. 2014). In this case, the plaintiff sought to enforce a maritime lien against the ATP TITAN. The Fifth Circuit agreed with the trial court that the ATP TITAN was not a vessel, and therefore there could be no maritime lien. *Id*. at 2516-18. The ATP TITAN was not a vessel because it was moored to the seabed by means of twelve chain mooring lines connected to twelve anchor

---

direction and an onshore production facility in the other. To move the spar, it had to be completely detached from the mooring lines and pipelines, which would take a significant amount of time and cost a significant amount of money. *Id*. at 318-19. The purpose of the ATP INNOVATOR is the same or similar to that of the RED HAWK.

piles. It was also connected to an oil and gas infrastructure, and it had not moved since in was constructed and installed at its location. Further, the ATP TITAN had no means of self-propulsion, other than manipulating its mooring lines, and moving the ATP TITAN would take a significant amount of time and cost a significant amount of money. In light of the foregoing, the court found that the ATP TITAN was not practically capable of transportation on water and was not a vessel. *Id*. at 2517-18.

Like all of the other structures that have been held by courts in this Circuit not to be vessels (*see* cases cited above), the ATP INNOVATOR is not a vessel. It has no means of propulsion, no thrusters, no DGPS automatic positioning system, no means of steering, no rudder and no raked bow. The purpose of the ATP INNOVATOR is the same as the ATP TITAN, the RED HAWK, the MATTERHORN SEASTAR and other similar production structures held not to be a vessel. The ATP INNOVATOR is built to be moored into place on the Outer Continental Shelf, connected to the oil and gas infrastructure, connected to export pipelines, and is supposed to remain in place for the life of the reservoir. In light of these characteristics, the ATP INNOVATOR is not practically capable of transporting people or things on water, and is therefore not a vessel.[22] *See Warrior Energy,* 2014 A.M.C. at 2517-18 and cases cited therein;

---

[22] Magistrate Judge Ellington, in her prior recommendation, correctly concluded that the ATP INNOVATOR is more like the BIG FOOT in *Baker v. Office of Workers' Compensation Programs*, 834 F.2d 542 (5th Cir. 2016) than the SUPER SCOOP in *Stewart v. Dutra Constr. Co.*, 543 U.S. 481 (2005). [Dkt. No. 29 at p. 11]. The features of the BIG FOOT are similar in nature to the ATP INNOVATOR. Like the ATP INNOVATOR, although the BIG FOOT floats, it is no means of self-propulsion, no steering, no raked bow, and no thrusters for positioning on location. During towing to its location, the BIG FOOT was tended by a crew employed to control the BIG FOOT during the towage. Once on location, the BIG FOOT was to be anchored to the seabed where it was to work for the life of the field. *Baker*, 834 F.2d at 544-45. The SUPER SCOOP, on the other hand, moves from place to place for the purpose of dredging, carrying its crew and equipment. While on location, the SUPER SCOOP moves itself

*Mooney*, 2013 A.M.C. at 1489-90 and cases cited therein; *Mendez*, 466 Fed. Appx. at 318-19. Since the ATP INNOVATOR is not a vessel, no maritime lien can be asserted against it. *See Warrior Energy,* 2014 A.M.C. at 2516-18.

WHEREFORE, PREMISES CONSIDERED, Amerindo Services Ltd., solely in its capacity as Claimant, prays: (1) that the Court hold that the ATP INNOVATOR is not a vessel, (2) because the ATP INNOVATOR is not a vessel, that the Court dismiss the arrest of the ATP INNOVATOR for lack of jurisdiction, and (3) for such other relief to which it may be justly entitled.

Respectfully submitted,

By: */s/ Richard L. Gorman*
Richard L. Gorman
State Bar No. 00784155
Federal Bar No. 15685
12335 Kingsride Ln. #354
Houston, Texas 77024-4116
Telephone: (832) 725-4026
Facsimile: (713) 239-1020
Email: rg@richardgormanlaw.com
Attorney for Claimant
Amerindo Services Ltd.

OF COUNSEL:

RICHARD GORMAN LAW

---

along while doing its work, carrying its work crew and equipment (other than just appurtenances) with it. *Stewart*, 543 U.S. at 495.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 5th day of July 2017, a copy of the foregoing was served on counsel fo record ***By Notice of Electronic Filing***.

              */s/ Richard L. Gorman*
              Of Richard Gorman Law

01879/motion.07/05/17